SMITH (MILLER v.). See Cases Nos. 9,589 and 9,590.

SMITH (MILLS v.). See Case No. 9,615.

## Case No. 13,081.

### SMITH v. MILN.

[Abb. Adm. 373.] 1

District Court, S. D. New York. Dec., 1848.

GARNISHMENT—DEFAULT—SUMMONS—PRACTICE IN ADMIRALTY.

1. Where a warrant of arrest, although containing a foreign attachment clause, gives no direction to bring the garnishee before the court, nor any citation to him to answer the libel, a default entered against him for non-appearance on the return of the process is irregular.

2. The primary purpose of the attachment is to effect the appearance of the defendant in the action, and not that of the garnishee.

3. The practice of courts of admiralty in respect to the process of foreign attachments defined.

[Cited in Atkins v. Fibre Disintegrating Co., 18 Wall. (85 U. S.) 306; The Alpena, 7 Fed. 363.]

4. In order to authorize proceedings in a suit prosecuted in a court of admiralty by foreign attachment, to be carried on against the garnishee personally, it is necessary that the warrant or process served upon him should contain a summons or notice, warning him of the claim in suit, and citing him to appear and answer.

This was a motion, made on behalf of a party against whom, as garnishee, proceedings in a suit were being prosecuted, to set aside the proceedings in relation to him, for irregularity.

Burr & Benedict, for the motion.
Alanson Nash, opposed.

BETTS, District Judge. The following facts are presented upon affidavits and the files of court, as the foundation of the motion and of the opposition to it:

A libel was filed in this court on the 2d

---

1 [Reported by William P. Mason, Esq.]

1 [Reported by Abbott Brothers.]

day of September last, by the present libellant against one Montgomery, master of the brig Margaret, for the recovery of wages. The libel charged that George Miln, in whose behalf the present motion is made, had in his hands freight moneys out of which the libellant was entitled to receive his wages for the voyage named in the libel, and that he also held other moneys belonging to the master and owner of the brig, by whom the wages demanded in the suit were owed to the libellant. It prayed process of arrest against the master of the vessel, and that he might be cited to appear and answer; and that, if he could not be found, that the property before mentioned might be attached to satisfy the libel, and that George Miln himself might be compelled to answer the interrogatories annexed thereto.

A warrant was issued against Montgomery on the second of September, and the return upon it by the marshal being "Not found," an alias was sued out upon the fifth, for the arrest of Montgomery, accompanied with a mandate that, if he could not be found, the marshal should attach his credits and effects in the hands of George Miln, as garnishee.

The return of the marshal to this writ, filed September 11th, was again that respondent was "Not found," and that a copy of the process had been served on George Miln as garnishee, personally.

No one appearing upon the return of the process, the proctor for the libellant caused a default to be entered against the garnishee, with an order of reference to a commissioner, to ascertain and report the amount of wages due to the libellant.

The report of the commissioner was filed on the 19th of September, finding the sum of $38.16 wages to be due to the libellant; and on the same day an order was entered confirming that report, with the addition that, "on motion of the libellant, it is ordered that the libellant recover in this action, against the credits and effects of the respondent in the hands of George Miln, the garnishee, the amount reported due, together with his costs to be taxed; and that the libellant have his execution against the said credits and effects in the hands of the said George Miln, to satisfy this decree."

The decree having been perfected, the libellant took out process of execution, returnable on the third Tuesday of October. It recited the libel, and that such proceedings were had thereupon, that by the judgment and decree of the court in the cause, entered on the 19th of September, the said George Miln was required to pay to the libellant the sum of $38.16, besides costs to be taxed, and that the costs had been taxed at $34.49, as by the files of the court fully appeared; and it commanded that out of the goods and chattels of the said George Miln, in his district, the marshal cause to be made $72.59; and it further commanded, that if for want of goods and chattels, lands and

tenements of said garnishee, he (the marshal) could not make that sum, he should then arrest the body of the said garnishee, and hold him safely to answer said decree.

The marshal having proceeded to levy the execution on the property of the garnishee, an order was granted, at his instance, by the court, staying all proceedings in the cause; and on that order, and on the preceding facts, a motion is now made by the advocate of the garnishee that all the proceedings in relation to him be set aside for irregularity, and with costs.

All the steps in the cause were taken sub silentio on the part of the libellant, without the consideration or sanction of the court; and the orders entered and the processes sued out were accordingly at his peril; no other acts being done in court, than to call the party and take the common orders of course upon his non-appearance, and to move a confirmation of the commissioner's report. The consequences to the libellant must be the same if the steps taken in court were irregular and unauthorized, although his proctor, on an ex parte motion, obtained the assent of the court to a formal default, because the terms of the order thereon are not prescribed or exhibited to the court. They are almost invariably drawn up and entered on the minutes, as of course, by the clerk. If they are found improvident or contrary to the course of practice, the aggrieved party may come in and have them summarily vacated for irregularity. This principle pervades the practice of courts of every denomination.

The exhibit of the papers and minutes of court demonstrates the entire irregularity of the libellant in obtaining execution against the property and person of the garnishee. There is no legal foundation laid for process of that character in any antecedent proceeding in the cause. No judgment was obtained or asked against the respondent, and accordingly there was no decree determining the right of the libellant to the wages or money demanded by the libel.

The libel only prays the attachment of Montgomery's effects in the garnishee's hands. It does not make the garnishee a party to the suit, or demand his arrest or citation; the prayer merely asking that he may answer interrogatories annexed to the libel, in no way connects him with the subject-matter of the action.

The warrant of arrest, with a foreign attachment clause, gave no direction to bring the garnishee into court by monition or capias; and accordingly furnished no authority for entering an order against him for contumacy or default, in not appearing upon its return. He was not brought within the jurisdiction of the court over the cause in such manner as entitled the libellant to a decree touching his property or person. If he held funds belonging to the respondent, they could not be rightfully exacted from

him, except upon the footing and by virtue of an existing debt against the respondent, duly ascertained and established.

The order or decree entered on confirming the commissioner's report was evidently awarded on the assumption that the respondent was duly in court, and adjudged indebted to the libellant, and it brought back the proceedings to their legitimate restriction, in directing that execution should go against his credits and effects in the hands of the garnishee.

The writ of execution taken thereupon was an entire departure from the decree, in subjecting the individual property and the person, also, of the garnishee, to the satisfaction of the debt.

The irregularity of this step is most gross and palpable. The antecedent proceedings on the part of the libellant in court furnish him with no color of authority for issuing final process of this stringency, or indeed for any final process against the garnishee. He might, with equal right, have put the fi. fa. and ca. sa. into the hands of the marshal in the first instance, and without filing a libel or obtaining an interlocutory order or decree in the cause; because all those proceedings had relation to Montgomery, the respondent, alone, and none of them in terms or 'spirit embraced the garnishee.

These considerations render it imperative upon the court to set aside the execution in toto, with costs to the garnishee.

Upon the argument, however, it was sought by the libellant to maintain the correctness and necessity of the practice adopted, as the only method by which it was practicable to give parties the benefit of a foreign attachment. It was urged that the notification of the existence of such warrant to the holder of the debtor's property was sufficient to compel him to come into court and surrender the property, or be held to admit, impliedly, that it was in his hands, and that it was adequate to satisfy the libellant's demand; and thus to novate him as debtor for the amount.

Although the remedy of foreign attachment is frequently resorted to in admiralty courts, there does not seem to be a very definite or uniform understanding with the profession in respect to the relation between the garnishee and the prosecuting party, or the method by which the assets of the debtor in the hands of the garnishee are to be brought under the authority of the court. It may, therefore, be useful to inquire into the correct and feasible course in respect to these proceedings.

The jurisprudence of civilized communities seems studious to furnish means for rendering the effects of debtors liable to the claims of their creditors; and probably no other tribunals than courts of common law have found themselves incapacitated to effectuate that end by their inherent powers, without having first brought the debtor personally under their authority. What, then, in the English common law is an exceptional rule, limited in its operation to two small districts, is, in other systems, a common and pervading principle.

The proceeding by way of foreign attachment is one of the most familiar and effective instrumentalities supplied the judicial authority to that end. In England it is recognized in the local customs of London and Exeter only, but is established on a broader foundation in the polity and practice of the judicatories of the continent, Scotland, and the United States. In these countries its force and utility is grounded in the high principle that personal obligations may be enforced by justice by preliminary and direct action on property, both for the purpose of compelling an appearance of the debtor, and his submission to the mandate of the courts, and also by the sequestration or transfer of such property to the benefit of those to whom it rightfully belongs, without other action against or coercion over the person of the debtor:

The scope and efficiency of this important remedy, and the method of its application, is instructively pointed out in the decision of the supreme court of the United States, in Manro v. Almeida, 10 Wheat. [23 U. S.] 473. It is a well-established branch of admiralty processes, not derived from the customs of London, but embodied in the admiralty jurisdiction, in common with other essential elements of its powers. That case also supplies rules sufficiently explicit and full to direct the use and application of this particular power.

The proper object for the libellant to seek in this case, by means of a foreign attachment, was to compel the appearance of Montgomery, the respondent, to the suit instituted against him. He could not be reached by capias or summons, and at common law the libellant would be remediless against him except by the complicated and dilatory proceeding to outlawry. 3 Bl. Comm. 284.

The writ of foreign attachment would have accomplished this purpose, expeditiously and with facility, if properly framed and conducted. In actions in personam in this court, a foreign attachment is never employed as an original or independent process. It is auxiliary to a capias or monition to the debtor, and subserves only the end which an arrest or appearance of the defendant by stipulation answered. Betts, Adm. Prac. 30. It may be directed against goods and chattels, or rights and credits of the debtor, and be carried into operation by actual arrest of goods, when they can be found, or by notice of the object of the proceeding to those who have either or both in their possession. Conkling, Adm. Prac. 478.

When the service of the attachment is by notice, and not by actual levy upon the goods, it must necessarily be shown to the court, before any order can be taken against the garnishee, that he has been warned of the remedy which the process demands, and for what cause, and of the time and place he must appear before the court. His duty on appearance is to discharge himself of the effect of the citation, by showing that he holds nothing be-

longing to the debtor, or by specifying exactly what it is, and submitting himself, in respect thereto, to the authority of the court; or he may contest the justness or amount of the libellant's demand.

A garnishee is a trustee, or one warned by legal process in respect to the interest of third parties in property held by him (Webst. Dict.; Bouv. Law Dict.; Enc. Am. tit. "Attachment, Foreign"), and garnishment is the process of warning or citation. Jac. Law Dict. Under the custom of London, the garnishee must be warned to refrain from paying money to the debtor held for him, and to appear and answer to the plaintiff's suit therefor. Bohun, Cust. & Priv. Lond. 256; Com. Dig. tit. "Attachment." So it seems he may plead to the general action, and deny the indebtedness of the defendant. Com. Dig. tit. "Attachment," E. The same rule obtains in respect to trustee process. 6 Dane, Abr. c. 192, art. 1. And in the American courts the proceeding seems to be termed indifferently, "garnishment," "trustee process," or "foreign attachment." Serg. Attachm.; Hildreth, Elem. of Law, 269–273; Bouv. Law Dict.; Enc. Am. tit. "Attachment, Foreign."

Under the English law, the garnishee may appear by attorney, and plead that he has no property of the defendant in his hands; or he may confess it, or he may wage his law, or plead other special matter. Bohun, Cust. & Priv. Lond. 256. The general issue is whether the garnishee had, at the time of the attachment, or at any time after, any money or goods of the defendant in his hands. Id. 255. The plaintiff is thus put to prove that the garnishee had moneys in his hands; and if this proof is not made, a verdict will be rendered for the garnishee. Id. 258.

When the proceeding is for the purpose of bringing the defendant into court, and he makes default on proclamation, a scire facias issues against the garnishee. Com. Dig. tit. "Foreign Attachment," A. On the appearance of the defendant, all proceedings against the garnishee cease. Cro. Eliz. 157, 593; Savage's Case, 1 Salk. 291. And he must have notice of the foreign attachment to bind him in the allotment of his effects to the debt by the garnishee. Fisher v. Lane, 3 Wils. 297.

In those courts of the different states of the Union in which the remedy of foreign attachment is employed, its effect is principally regulated by statute; but in all cases the cardinal principle in the proceeding is that the trustee or garnishee shall, by summons or scire facias, be brought into court with notice of the claim upon him, and that he should have a full opportunity to oppose the demand. 6 Dane, Abr. p. 492, c. 192, arts. 1–8; and see the practice in various states, as explained in Graighle v. Notnagel [Case No. 5,679]; Mankin v. Chandler [Id. 9,030]; Fisher v. Consequa [Id. 4,816]; Franklin v. Ward [Id. 5,055]; Flower v. Parker [Id. 4,801];

Picquet v. Swan [Id. 11,133]; Barry v. Foyles, 1 Pet. [26 U. S.] 315; Brashear v. West, 7 Pet. [32 U. S.] 621; 2 U. S. Dig. Supp. 884.

Although the process of foreign attachment, as employed in courts of admiralty, is not borrowed from that given by the custom of London, yet both remedies being directed to a common object, and founded upon unity of principle, light is reflected by the one upon the other; and we may accordingly recur with advantage to the practice of the law courts for explications of the methods by which the common design may be best effectuated.

In this case, however, the more specific inquiry is, how the law and practice on this head stand in the courts of admiralty. The books are not full or explicit on the subject. They furnish little more than a clear recognition of the remedy, and give but scanty details of the method used in administering it.

Clarke's Praxis, the earliest historical record of the practice in admiralty, was compiled, as appears by the preface to the edition in Latin, during the reign of Elizabeth, and became a standard authority long before it was published; and the scattered manuscripts were ultimately revised and arranged for publication under the sanction of men of great eminence and experience in that branch of the law. It has always been accepted as the most authoritative exposition extent of the early course and usages adopted in admiralty proceedings. 1 Browne, Civ. & Adm. Law, 396; Sir Henry Blount's Case, 1 Atk. 295; Marv. Leg. Bib. tit. "Clerke," F. He speaks of attachments of property by warrant in admiralty, as an ordinary usage of the court, in case a debtor is concealed or absconded, and in case his goods are held by others, in order to compel his appearance in court, and also to appropriate his effects to the satisfaction of his debts. The primary purpose of the warrant was to enforce the personal appearance of the party, that his condemnation might afford ground for sequestering his property; and to that end, both the debtor and the person holding his goods are to be cited to appear in court, and answer to the matter of claim in the libel. Clarke, Prac. tits. 28, 32. Hall's additions to those articles show the root in the then civil law from which the proceedings by foreign attachment sprung. Hall, Adm. Prac. 60, 70. It is plainly the origin, also, of creditor's bills in chancery.

The United States district court in South Carolina (Bouysson v. Miller [Case No. 1,709]), under that authority, issued a warrant to arrest property of a debtor to compel his appearance to a libel; and although the form of the warrant is not given, the case implies that the process conformed to the directions given by Clarke.

The rules of practice of this court, first compiled in 1828, and revised in 1838, pro-

vide, that if a party against whom a warrant of arrest issues cannot be found, and return to that effect be made upon the writ, the plaintiff may, upon the mandate of the judge, have a warrant to attach the property of the defendant, and may also have a clause of foreign attachment inserted therein, according to the course of the admiralty. Dist. Ct. Rule 25. The same practice prevails in the First circuit. Dunl. Adm. Prac. 139.

The foreign attachment sued out here must be "according to the course of the admiralty;" and that has been shown to require that a notice or citation to the garnishee shall compose a part of the process. The argument against this motion is, that by rule 29 of the district court, the garnishee was obliged, on the mere attachment of the goods of a debtor in his hands, to file his affidavit, giving a full statement of the property in his hands, or to pay it into court; and it is accordingly contended that such attachment was all the notice or warning necessary to be given him.

The rule referred to will not justify that interpretation. It does not prescribe the contents or regulate the manner of serving a foreign attachment. These proceedings are supposed by the rule to have been already taken conformably to the course of the admiralty; and the rule then supplies a summary and cheap method by which the holder of the property impounded may become discharged from the case, and whereby, also, the creditor may be secured the control of the property attached.

Rules 2 and 37 of the supreme court (adopted since the decision of Manro v. Almeida, 10 Wheat. [23 U. S.] 473) specify concisely the course which the creditor and the garnishee are respectively to pursue under a foreign attachment. The process is described by which a defendant may be arrested in suits in personam. The mesne process may be merely a warrant of arrest of the person, or a simple monition, in the nature of a summons, to appear and answer to the suit, as may be prayed for in the libel, or the warrant for the arrest of the person may have a clause therein directing the officer, if the defendant cannot be found, to attach his goods and chattels, or if such property cannot be found, then to attach his credits and effects in the hands of the garnishees named therein.

It is insisted that the foreign attachment clause authorized by this rule is not required to contain also a summons or notice to the garnishee to appear, and that accordingly, no such citation need be made. The argument would, however, equally prove that it is not necessary to cite or summon the defendant himself; for as he is absent and cannot be arrested, if no citation is to be served upon the holder of his property, the libellant might seize the property and take a final decree and dispose of it, without notification of his proceedings to any person. This, manifestly, would be a violation of the first principles of personal rights and rights of property. Rule 37 of the supreme court, instead of favoring that interpretation, on the contrary expressly provides that the attachment clause shall summon the garnishee to appear and answer before the court, as in ordinary cases in invitum. He is also required to answer upon oath as to the debts or effects of the debtor in his hands, and to such interrogatories as may be propounded by the libellant; and if he refuse or neglect to do so, the court may award compulsory process in personam against him. Sup. Ct. Rule 37.

A party will not, upon general principles, be subjected to an attachment except for disobeying or contemning some process or mandate of court; and the principle imports that he has been brought within the jurisdiction of the court by service of proper process upon him.

In any view to be taken of the subject, I am of opinion that the proceedings on the part of the libellant in this cause against the garnishee, are void for irregularity, and they must accordingly be set aside with costs. Order accordingly.