MITCHELL (HARMONY v.). See Case No. 6,082.

MITCHELL (HAWLEY v.). See Case No. 6,250.

## Case No. 9,663.

### MITCHELL v. KELSEY et al.

[N. Y. Times. July 18, 1862.]

District Court, S. D. New York. 1862.

PRACTICE—REFERENCE—EVIDENCE—RECOUPMENT.

[1. An amended order, entered by consent, after defendant's default, referring the cause to a commissioner to ascertain the amount, "if any," due libelant, operates only to remove the defendants' default so as to permit him to contest libelant's claim; and the parties cannot by consent give the commissioner jurisdiction of matters set up in the answer, unless they extend to payment or satisfaction of libelant's claim.]

[2. Where libelant's claim is referred to a commissioner, his report is not objectionable in omitting a detail of allowances on which it is founded, unless defendant has demanded a specification of such allowance.]

[This was a libel by Andrew C. Mitchell against Charles Kelsey and others, owners of the bark Philena.]

BETTS, District Judge. This cause is brought into court as one of civil and maritime jurisdiction, in which a warrant of attachment was prayed against the defendants with a claim of foreign attachment. Such process was issued in October term, 1853, and was returned in the same term by the marshal, "personally served on Charles Kelsey, one of the defendants, others not found." No steps are shown to have been taken to bring the other respondents, who were joint owners of the vessel, into court. The libel is filed in the name of an assignor of the former master of the vessel, and demands $6,632.82, with interest from Sept. 10, 1853, for wages earned, advances and payments made by the master, on a voyage from this port to California, on the liability of the vessel and owners. The answer takes direct issue upon the allegations of the libel, charging the liability of the defendants, and also charges misconduct of the master on the voyage, his wrongful deviation therefrom, and other acts to the loss and prejudice of the defendants in his management of their business, and demands large damages. The averments of the answer are not stated more particularly, because they are not legally brought in review by the present form of the proceedings. The case proceeded dilatorily in court to April term, 1855, when the proctors for the libelant moved the default of the defendants on the calendar notice for non-ap-

pearance thereon, and for the usual interlocutory order which was granted, that the cause be referred to a commissioner of the court, to ascertain and compute the amount due to the libelant, and to report thereon to the court, &c. In August term, 1856, by written consent between the parties, the above order of reference was amended to read as follows: "This cause being called in its order on the calendar, ordered that it be referred to a commissioner, to ascertain and report the amount, if any, due the libelants." Both orders were obtained and entered in court when the late Judge Ingersoll presided therein, and if anything was intended to be granted or reserved between the parties out of the language of the orders themselves, it cannot now be made available further than implied waivers of mere irregularities in practice. Such had already occurred.

It appears on the commissioner's minutes of the hearing before him that it had commenced and been proceeded upon in October, 1855, and thenceforward continued under the amended reference as if that order had opened the whole controversy in favor of the defendants as well as the libelants. So, also, the course of procedure of both parties indicates that the commissioner was to investigate and report finally on the claims of every description raised by the answer against the master, (or libelant,) yet that fact nowhere appears in the order of reference, or the report of the commissioner in his minutes of the hearing before him, which is returned to the court as composing the evidence on the hearing. The reference was protracted before the commission until February, 1860, on the 27th of which day it was signed by the commissioner, but not filed by the libelant until the 15th of May, 1861. To render the proceedings more confused and incongruous, the defendant filed his exceptions to the commissioner's report, Nov. 10, 1860, nearly nine months after it was signed, and six months before it was filed in court, at which time the proctor for the libelant obtained an order that the case be placed upon the calendar for argument upon the exceptions at the same term. The argument was not, in fact, called on until April term, 1861. The whole course of procedure, from the initiation of the suit to the final hearing evinces a singular disregard of regular practice in such mode of action, and marked remissness and indifference of all parties concerned in the controversy, to the progress of the cause or the manner in which it was conducted or supported on either side. This is probably attributable to repeated change of proctors and advocates on the one side or the other, as the case was in the hands of skillful and experienced counsel. The cause, when put upon hearing in April term last, was orally discussed in court between the counsel for three days; who then proposed to give the court a clearer understanding of the subject by submitting all the depositions in writing, vouchers and other documents, together with written briefs and arguments. Those written points, briefs and arguments, covered more than one hundred pages of foolscap manuscript, but failed to elucidate the matters brought into question, so as to render the clear right and justness of the case, on the part of either litigant, satisfactorily plain or convincing to the court, and they leave the cause to be determined rather upon technical rules than the manifest legal or equitable title on the evidence rendered.

1. The writ was instituted in the name of a third party, who shows no priority of interest in the original contract between the defendants and his assignor; and being a near relative of the assignor, and coming into the controversy long after the cause of action accrued, it is at least equivocal upon the proofs whether he is not in the suit a speculator or volunteer, without having parted with valuable consideration for the assignment. 2. Capt. Swain, in whom all the interest in fact and in the origin of the claim in suit was vested, and against whom all the liabilities set up in the defence rested, was the main witness on the reference, and upon whose evidence the report of the commissioner must have been essentially founded. He was examined as a witness orally before the commissioner in October, 1855, and in December afterwards, de bene esse, before the commissioner, and it nowhere appears that objection was then or afterwards taken to his competency to testify in the case. 3. The exceptions point out no particular error in fact or law committed by the commissioner. 4. The argument assumes throughout that the reference imposed authority upon the commissioner to hear and determine in place of the court, the entire merits on the issues in the pleadings. Such exercise of power by the commissioner would be manifestly irregular unless expressly given him by the court. No other matter was before the commissioner under the default and order of reference, than the money demand stated in the libel. It appears to me that the course pursued on this hearing substantially overlooks the case which the court can only regard. The order of reference embraced nothing more than an inquiry into the state of the captain's account for wages due and money paid or supplies furnished by him for the owners. The default of the defendant in court legally excluded him from denying that such indebtedness existed, and the inquiry was legitimately directed to the ascertainment of the quantum of that debt alone. The report of the commissioner meets that inquiry by stating the balance due the master. There the authority of the commissioner ends under the order.

Whatever interest goes with the principal as a legal incident is not matter of fact for the commissioner to find and report. That report is not exceptionable in omitting a detail of allowances upon which it is founded.

The defendant should have demanded such specification if it was his right and important to him, and in omitting so to do, the court must acquiesce in that side of the report. Indeed, his exception would be fatal if directly falsifying the report unless it pointed to particulars which had been objected to on the hearing and were, notwithstanding the objection, allowed by the commissioner. The question would then legitimately arise and could be decided by the court, whether an error had been committed by the commissioner. The commissioner under this reference, had no authority to inquire into and pass upon any charges or allegations set up in the answer against the master in recoupment or otherwise, whether in relation to money or property or the acts or omissions of the master on the voyage, unless such doings or things so alleged were chargeable against the master and acquired by him in payment or satisfaction of the debt due him. If within the authority of the court so to refer the whole subject of the litigation to the commissioner, it was not done by these orders. The issues made by the pleadings were not per se proper subjects of reference. They should have been passed upon by the court, and the legal rights of the parties be fixed by direct decree. The default of the defendant withdrew in law the defence pleaded by him, and left the libelant entitled to a reference for the purpose only to obtain an adjustment of his account. The amendment in August term, 1856, to the original order, no way enlarged the former one. It would operate only to remove the defendants' default and permit him to contest the truth of the libelant's account before the commissioner. This has not been done either by impeaching any particulars allowed in the account, or afterwards calling upon the commissioner to give in a specification of these items and their offering to disprove them before the court upon exceptions or on re-reference. There is an error on the face of the report which the defendant is entitled to have rectified. The libel avers no liquidated debt or amount stated, and the report itself demonstrates that the amount charged was not a true balance due, and rejected nearly two-thirds of the face of it. The commissioner reports $1,683.50 interest on the balance of account allowed the libelant. This is erroneous. The account was unliquidated between the parties, and would remain so and not entitled to carry interest until judgment of the court upon the report of the referee was rendered.

Judgment must accordingly be rendered against the exceptions, and in favor of the libelant on the report for $2,691.08, with costs.

[NOTE. The case came again before the court at a subsequent date, when the libelants moved to confirm the commissioner's report, and to modify the order of the court, which disallowed a certain sum for interest on the amount due. The motion was denied. Case No. 9,664.]