**AQUA STOLI SHIPPING LTD.,**
**Plaintiff–Appellant,**

v.

**GARDNER SMITH PTY LTD.,**
**Defendant–Appellee.**

**Docket No. 05–5385–CV.**

United States Court of Appeals,
Second Circuit.

Argued: March 2, 2006.

Decided: July 31, 2006.

---

Patrick F. Lennon, Tisdale & Lennon, LLC, New York, NY, for Plaintiff–Appellant.

Leroy Lambert, Healy & Baillie, LLP (William N. France, Jack A. Greenbaum, of counsel), for Defendant–Appellee.

Bruce E. Clark (H. Rodgin Cohen, Michael M. Wiseman, Patricia Cyr, of counsel), Sullivan & Cromwell, L.L.C., New York, NY, for amicus curiae The Clearing House Association L.L.C. in support of Defendant–Appellee.

Thomas C. Baxter, Jr. (Stephanie A. Heller, Shari D. Levethal, Joseph H. Sommer, of counsel), Federal Reserve Bank of

New York, for amicus curiae Federal Reserve Bank of New York in support of Defendant–Appellee.

Before WALKER, Chief Judge, CARDAMONE and SOTOMAYOR, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Maritime attachment, used by parties in admiralty cases to secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory, is of ancient origins. In more recent times, admiralty litigants have creatively deployed this procedure to attach bank credits used in electronic fund transfers ("EFTs") to or from parties absent from the district. Plaintiff Aqua Stoli Shipping Ltd. ("Aqua Stoli") moved for an *ex parte* order of maritime attachment on such of defendant Gardner Smith Pty Ltd.'s ("Gardner Smith") assets as were located within the Southern District of New York. The district court (Jed S. Rakoff, *Judge*) granted the order, subject to a later hearing, and Aqua Stoli served the order on certain banks within the district, attaching EFTs to or from Gardner Smith as they passed through those institutions.

We hold that, once a plaintiff has carried his burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon circumstances not present in this case. Circumstances that may justify a vacatur can occur where 1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment.

## BACKGROUND

In April 2005, Aqua Stoli, a Liberian company, chartered its ship, the M/V Aqua Stoli, to Gardner Smith to carry a cargo of tallow from Brazil to Pakistan. When the M/V Aqua Stoli arrived in Brazil, Gardner Smith refused to load the tallow on the belief that the ship was not sufficiently seaworthy to make the trip. Aqua Stoli disputed this rejection and began an arbitration proceeding in London under the arbitration provision of the charter, claiming $1.45 million in damages. Gardner Smith counterclaimed in the arbitration for a similar amount and obtained security by seizing the M/V Aqua Stoli in Singapore, which was later released after Aqua Stoli posted security. Aqua Stoli is presently litigating the amount of security in a Singapore court.

Aqua Stoli in turn asked Gardner Smith to post security voluntarily for its claim in the London arbitration. After Gardner Smith refused, Aqua Stoli brought this action in the Southern District of New York. Aqua Stoli sought an *ex parte* attachment order under Supplemental Rule B, Fed.R.Civ.P. Supp. Rule B, to attach any assets of Gardner Smith's located within the district. The district court granted the *ex parte* order, subject to the subsequent hearing provided by Rule E(4)(f), *id.* Supp. Rule E(4)(f), at which Gardner Smith could contest the attachment. Aqua Stoli served the attachment order on banks in the district that, although they did not hold accounts in Gardner Smith's name, temporarily handled wire transfers in U.S. dollars to or from Gardner Smith. Under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction. *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir.2002).[1]

---

**1.** We explained the operation of EFTs in *United States v. Daccarett*, 6 F.3d 37, 43–44 (2d

Gardner Smith contested the attachment under Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims to the Federal Rules of Civil Procedure. The district court held that Rule E authorized it to vacate any attachment, although facially valid, if the plaintiff failed to demonstrate at a subsequent hearing that the attachment was necessary to obtain personal jurisdiction over the defendant or to secure payment of a potential judgment. It further held that, even if the plaintiff could establish such necessity, the attachment could nevertheless be vacated if the defendant proved that the attachment was sought "simply to gain a tactical advantage" or that the prejudice to the defendant outweighed the benefit to the plaintiff. Applying these rules, the district court decided that Aqua Stoli had no need for the attachment because Gardner Smith was a substantial on-going business with sufficient assets outside the district to satisfy any potential judgment. It also found that the burden of the attachment on Gardner Smith outweighed the benefit to Aqua Stoli because the interception of EFTs substantially impaired Gardner Smith's ability to move money internationally. The district court vacated the attachment, and this appeal followed. *Aqua Sto-li Shipping Ltd. v. Gardner Smith Pty Ltd.*, 384 F.Supp.2d 726 (S.D.N.Y.2005).

## DISCUSSION

### I. Maritime Attachment Generally

"[M]aritime attachment is a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47 (2d Cir.1996). In fact, "[t]he use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty ... has prevailed during a period extending as far back as the authentic history of those tribunals can be traced." *Atkins v. The Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303, 21 L.Ed. 841 (1874). The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution. U.S. Const. art. III, § 2. The power's historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*,

Cir.1993):

> When a customer wants to commence an EFT, its bank sends a message to the transfer system's central computer, indicating the amount of money to be transferred, the sending bank, the receiving bank, and the intended beneficiary. The central computer then adjusts the account balances of the sending and receiving banks and generates a printout of a debit ticket at the sending bank and a credit ticket at the receiving bank. After the receiving bank gets the credit ticket, it notifies the beneficiary of the transfer. If the originating bank and the destination bank belong to the same wire transfer system, then they are the only sending and receiving banks, and the trans-

> fer can be completed in one transaction. However, if the originating bank and the destination bank are not members of the same wire transfer system, which is often the case with international transfers, it is necessary to transfer the funds by a series of transactions through one or more intermediary banks.
>
> Because of the international nature of maritime transactions, intermediary banks are frequently used. *See* N.Y. U.C.C. Law § 4–A–104(2). *Winter Storm*, 310 F.3d at 274–78, permitted the attachment of funds while those funds are in an intermediary bank temporarily as a credit before being passed through to the beneficiary of the transaction or another intermediary bank.

339 U.S. 684, 693, 70 S.Ct. 861, 94 L.Ed. 1206 (1950).

The first uniform federal rules for admiralty and maritime proceedings ("Admiralty Rules") were promulgated by the Supreme Court in 1844, and a revised version was released in 1920. *See* R. of Prac. for the Cts. of the U.S. in Adm. & Mar. Jurisdiction, 254 U.S. 671 (1920); R. of Prac. of the Cts. of the U.S. in Causes of Adm. & Mar. Jurisdiction, 44 U.S. (3 How.) at i (1845); *see generally* Charles Allen Wright & Arthur R. Miller, 4 Federal Practice and Procedure Civil 3d § 1014, at 72 (2002). However, by the middle of the last century, the need for general reform became apparent. *See* Wright & Miller, *supra,* § 1014, at 73. Therefore, under the Rules Enabling Act, 28 U.S.C. § 2073, the Supreme Court in 1966 established the Supplemental Rules for Certain Admiralty and Maritime Claims, 383 U.S. 1071 (1966), a reformed and comprehensive codification of admiralty rules to govern the practice of the federal courts. Periodic amendments have followed.

Two of these Supplemental Rules are relevant to this case. First, Rule B governs the process by which a party may attach another party's assets. Rule B provides in relevant part:

If a defendant is not found within the district, ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.... The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed.R.Civ.P. Supp. Rule B(1). To begin the process, a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. *Id.* If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, which the plaintiff may then serve on any persons in possession of the defendant's property located within the district. The order of attachment may be requested and granted *ex parte,* though notice of the attachment to the defendant via appropriate service is required. *Id.* Supp. Rules B(2), E(3).

Second, the defendant has an opportunity under Rule E(4)(f) to appear before the district court to contest the attachment once its property has been restrained. Rule E(4)(f) provides, in relevant part:

Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules ....

*Id.* Supp. Rule E(4)(f).

The text of Rule E(4)(f) itself does not explain under what circumstances the district court should vacate the attachment. Without doubt the Rule E(4)(f) hearing provides defendants with an opportunity to argue that the requirements of Rule B were not in fact met—for example, that the defendant turned out to be "found within the district." *Id.* Supp. Rule B(1)(a). The question presented in this case is to what extent the district court may require a showing by the plaintiff beyond the simple fact that the textual requirements of Rule B have been met.

## II. The District Court's Decision

In the district court's view, it possessed "inherent power" to fashion an appropriate test for the vacatur of an attachment notwithstanding its validity under Rule B. *Aqua Stoli*, 384 F.Supp.2d at 729. Exercising that power, the district court held that a plaintiff has the burden of showing not only that the attachment order meets the technical requirements of Rules B and E, but also that the attachment is necessary to obtain jurisdiction over the defendant or to provide needed security. *Id.* Even if the plaintiff makes such a showing, the district court held that the attachment still may be vacated if the defendant shows that the plaintiff sought the attachment to obtain a tactical advantage over the defendant or that the hardship to the defendant caused by the attachment outweighs the benefit to the plaintiff. *Id.*

Applying this needs-plus-balancing test, the district court vacated the attachment in this case. First, the district court determined that Aqua Stoli, which was maintaining an arbitration against Gardner Smith in London, had not shown a need for security because Gardner Smith is a large, financially secure company. Thus, the district court reasoned, Aqua Stoli needed neither security from nor jurisdiction over Gardner Smith. *Id.* at 729–30. Alternatively, the district court concluded that Gardner Smith established that the attachment's burden outweighed any benefit to Aqua Stoli. The district court found the benefit to Aqua Stoli was slight because Aqua Stoli would have no trouble satisfying a judgment resulting from the London arbitration and that the burden on Gardner Smith was great because the attachment of EFTs interrupted Gardner Smith's ability to send or receive wire transfers in U.S. dollars. *Id.* at 730.

Gardner Smith maintains that the district court's rule was correct. Aqua Stoli, however, argues that the power of the district court at a Rule E(4)(f) hearing is limited simply to examining whether the attachment complies with the formal requirements of Rule B. In Aqua Stoli's view, the only valid grounds for vacatur of the attachment is a failure to meet these requirements.

Despite frequent litigation in the district courts over this question, this circuit has yet to speak directly on the showing necessary to vacate a maritime attachment under Rule E. While we have suggested that the showing required by Rule B(1) for the initial order of attachment is minimal, *see ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 434 (2d Cir.2000), and have also opined on the related question of when a party is "not found within the district" for purposes of Rule B, *see Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582–84 (2d Cir.1963), we have not answered the question of whether a maritime attachment, admittedly valid under Rule B, may be vacated and, if so, what showing is required.

■ We generally review the district court's decision vacating a maritime attachment order for abuse of discretion. *ContiChem*, 229 F.3d at 430. However, a district court necessarily abuses its discretion when its decision rests on an error of law or a clearly erroneous finding of fact. *MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143–44 (2d Cir.2004). Because we are here reviewing the legal predicate for an exercise of discretion, our review is de novo. *See Winter Storm*, 310 F.3d at 267.

## III. Maritime Attachment Before Rule E(4)(f)

Because of the commercial importance of the ports of New York, there is a long history of maritime attachments in the fed-

eral courts of the Second Circuit. Reported decisions of maritime attachments and resulting suits in New York date from the middle of the nineteenth century. *See, e.g., Mitchell v. Kelsey,* 17 F. Cas. 501 (S.D.N.Y.1862) (No. 9,663); *Smith v. Miln,* 22 F. Cas. 603 (S.D.N.Y.1848) (No. 13,081); *The Zenobia,* 30 F. Cas. 922 (S.D.N.Y. 1847) (No. 18,209); *see also The Native,* 17 F. Cas. 1242 (C.C.S.D.N.Y.1876) (No. 10,-054). As a result of this rich history, the Eastern and Southern Districts of New York had formerly promulgated their own set of local admiralty rules (the "Local Rules") to fill the gaps in the national rules.

Under the Admiralty Rules of 1844 and 1920 and the version of Rule B promulgated by the Supreme Court in 1966, the defendant had no clear right to contest an attachment. *See* Supp. R. for Certain Adm. & Mar. Cls., 383 U.S. at 1071–73 (1966 version of Rule B); Admiralty Rules, 254 U.S. at 679 (1920 version); 44 U.S. (3 How.) at i (1844 version). In response to the Due Process concern over the absence of a prompt post-seizure hearing at which the defendant could contest the validity of the seizure, expressed in other contexts, *see, e.g., N. Ga. Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), subsection (4)(f) was

added to Rule E in 1985 to provide just such a hearing. *See* Fed.R.Civ.P. Supp. Rule E, advisory committee's note (1985 amendment). Prior to the 1985 amendment, as the notes explain, the Due Process concern was addressed by the former Local Rule 12, upon which subsection (4)(f) was modeled. *Id.; cf.* E.D.N.Y. & S.D.N.Y. R. for Adm. & Mar. Cls. 12 (1984).[2] How much of the local practice the Supreme Court meant to adopt in promulgating Rule E(4)(f) is a matter of legitimate debate. The Advisory Committee's notes explain only that subsection (4)(f) was promulgated in order to provide the post-deprivation hearing required by Due Process; they nowhere intimate that the Court was also adopting the standards for vacatur that the Eastern and Southern Districts then practiced. The parties to this case, however, argue that the pre-Rule E(4)(f) cases should be given great weight because they are indicative of the background rule the Supreme Court adopted in promulgating subsection (4)(f). While we are less certain that this is so than the parties, we nonetheless examine those non-binding cases for their persuasive value and find that the pre-Rule E(4)(f) district court cases do not support Gardner Smith's position.

Our review indicates that no district court countenanced the degree of discretion in vacating maritime attachments that

---

**2.** Local Rule 12 provided:

Where property is arrested or attached, any person claiming an interest in the property arrested or attached, may upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted consistent with these rules or the Supplemental Rules.

E.D.N.Y. & S.D.N.Y. R. for Adm. & Mar. Cls. 12 (1984). We have been able to track Rule 12's provenance to the early nineteenth centu-

ry. *See* R. of the Dist. Ct. of the U.S. for the S.D.N.Y. 36 (1838), *in* Samuel R. Betts, A Summary of Practice in Instance, Revenue and Prize Causes, in the Admiralty Courts of the United States for the Southern District of New–York; and also on Appeal to the Supreme Court: Together with the Rules of the District Court (New–York, Halsted and Voorhies 1838). Various non-substantive changes were made to the rules until 1998, when the rules were recodified to conform to the Supplemental Rules. *See* E.D.N.Y. & S.D.N.Y. Adm. R. E.1 (1998).

Gardner Smith now advances. Rather, cases like *D/S A/S Flint v. Sabre Shipping Corp.*, 228 F.Supp. 384 (E.D.N.Y.1964), are typical. There the plaintiff had attached assets in the Eastern District belonging to the defendant, who maintained a place of business in the Southern District and conducted some business in the Eastern District. *Id.* at 385. In deciding whether to vacate the attachment, the district court looked only to the textual requirements of the statute providing for attachments: that the defendant could not be "found" within the district.[3] *Id.* at 387. A defendant could be "found" only if it was 1) subject to personal jurisdiction within the district and 2) capable of being served with process there. *Id.* Because the defendant's business presence in the Eastern District was sufficient to subject it to personal jurisdiction and because the defendant could be served there, the defendant could be "found" within the Eastern District, and the attachment was improper. *Id.* at 389–90.

*Antco Shipping Co. v. Yukon Compania Naviera, S.A.*, 318 F.Supp. 626 (S.D.N.Y. 1970), presented a similar situation. As in *Flint*, the defendant sought to vacate an attachment because the defendant could be found within the district, this time the Southern District. *Id.* at 627. Because service of process could be served on Yukon's managing agent located within the state, the second element of the test was met. Likewise, because the conduct complained of took place within the Southern District, the defendant was subject to personal jurisdiction there. *Id.* at 629–30. Because both the jurisdictional and service requirements were met, the attachment was vacated.

The caselaw decided under Local Rule 12 confirming the test articulated in *Flint* and *Antco* is ample. *See Excel Shipping Corp. v. Seatrain Int'l S.A.*, 584 F.Supp. 734 (E.D.N.Y.1984); *Constr. Exp. Enters., Uneca v. Nikki Mar. Ltd.*, 558 F.Supp. 1372 (S.D.N.Y.1983); *Atlas Chartering Servs., Inc. v. World Trade Group, Inc.*, 453 F.Supp. 861 (S.D.N.Y.1978); *Eng'g Equip. Co. v. S.S. Selene*, 446 F.Supp. 706 (S.D.N.Y.1978); *Andros Compania Maritima, S.A. v. Andre & Cie.; S.A.*, 430

---

3. Supplemental Rule B now governs the requirements for maritime attachments. The 1920 and 1844 versions of Admiralty Rule 2 were Rule B's direct predecessors. The 1920 version of Rule 2 was, in relevant part, as follows:

> In suits *in personam* the mesne process shall be by a simple monition in the nature of a summons to appear and answer to the suit, or by a simple warrant of arrest of the person of the respondent in the nature of a capias, as the libellant may, in his libel or information pray for or elect; in either case with a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel to the amount sued for, if said respondent shall not be found within the District.

Admiralty Rules of 1920, Rule 2, 254 U.S. at 679.

In 1844, its predecessor read:

> In suits in personam, the mesne process may be by a simple warrant of arrest of the person of the defendant in the nature of a capias, or by a warrant of arrest of the person of the defendant with a clause therein, that if he cannot be found, to attach his goods and chattels to the amount sued for, or if such property cannot be found, to attach his credits and effects to the amount sued for in the hands of the garnishees named therein; or, by a simple monition in the nature of a summons to appear and answer to the suit, as the libellant shall, in his libel or information, pray for, or elect.

Admiralty Rules of 1844, Rule 2, 44 U.S. (3 How.) at iii.

We treat the requirements for the initial attachment under both versions of Admiralty Rule 2 and their successor, modern Rule B, as identical, and the parties do not dispute the showing necessary to obtain an attachment in the first instance, only upon what showing the attachment may be vacated.

F.Supp. 88 (S.D.N.Y.1977); *E. Asiatic Co. v. Indomar, Ltd.*, 422 F.Supp. 1335 (S.D.N.Y.1976); *Reefer Express Lines Pty., Ltd. v. Petmovar, S.A.*, 420 F.Supp. 16 (S.D.N.Y.1976); *United States v. Cia. Naviera Cont'l S.A.*, 178 F.Supp. 561 (S.D.N.Y.1959); *Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De Vapores, S.A.*, 158 F.Supp. 107 (S.D.N.Y.1957). In none of these cases, from the late 1950s to the mid–1980s, was the determinative question anything other than whether the defendant could be "found" within the district—in other words, whether the textual requirements of the attachment rule were met.

Gardner Smith relies on one Local Rule 12 case, *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119 (S.D.N.Y.1979), to argue that district courts have inherent equitable authority to vacate attachment orders on grounds of "unfairness" to the attached party. Although *Integrated* does contain language that taken in isolation could be read to support a broad equitable inquiry, *see id.* at 124 ("[C]ourts may easily … set aside an unfair attachment."), close examination reveals that the discretion contemplated in that case turned on a limited set of factors that are absent in this case.

In *Integrated*, defendants sought to vacate the attachment on the grounds that they were present within the district within the meaning of Rule B because they could be sued in the district under the minimum-contacts test of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in light of the fact that the parties negotiated the disputed contract in the Southern District. *See Integrated*, 476 F.Supp. at 123. The district court agreed that the defendants were subject to personal jurisdiction in the Southern District. The defendants next argued that they could be served with process in the Southern District because, despite the absence of an agent to accept service in the Southern District, they could be served in Albany by service upon the secretary of state. The defendants argued that this was equivalent to being subject to service in the Southern District because the Southern District courts could issue process anywhere within the state, *see* Fed.R.Civ.P. 4(e). *Integrated*, 476 F.Supp. at 124–25.

The district court rejected this argument, holding that the ability to be served with process upon the secretary of state was not equivalent to being amenable to service in the district within the meaning of Rule B. *Id.* at 124. Then–District Judge Leval astutely noted, however, the possibility of abuse by the attaching party in some circumstances. Because an attachment may issue any time the defendant is absent from the district, rather than the state, *cf.* Fed.R.Civ.P. 4(e), an attachment order would be proper under Rule B in one district even though a normal *in personam* suit could be maintained in another district within the state. For example, a clever plaintiff might seek to attach assets in the Eastern District of a party who could be "found" in the Southern District but not in the Eastern District. Noting the unfairness of such an attachment—the use of the exceptional remedy of maritime attachment when normal civil proceedings were readily available—the district court explained that courts have inherent authority to vacate such attachments. *Id.*

The discussion in *Integrated* supports a limited equitable vacatur for the reasons just described. However, neither that case nor any other under Rule 12 provides support for the more expansive discretion applied by the court below and pressed here by Gardner Smith. To the extent that the parties rely on the history of the

local practice under Local Rule 12, those cases support only the limited vacatur power argued by Aqua Stoli.

## IV. The Purposes of Maritime Attachment

█ Maritime attachments arose because it is frequently, but not always, more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. Maritime parties are peripatetic, and their assets are often transitory. *See In re Louisville Underwriters,* 134 U.S. 488, 493, 10 S.Ct. 587, 33 L.Ed. 991 (1890). Thus, the traditional policy underlying maritime attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment. *See Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648, 655 (2d Cir.1979).

This policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained. As Judge Leval explained in *Integrated:*

> [A]ttachment is precluded under Admiralty Rule B(1) only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise *in personam* jurisdiction over the defendants ... *and* in addition can be found within the geographical confines of the district for service of process.

*Integrated,* 476 F.Supp. at 122 (citing *Seawind Compania, S.A.,* 320 F.2d at 582; *Antco Shipping Co.,* 318 F.Supp. 626). We agree with Judge Leval that this test is somewhat "arbitrary," *id.,* presuming that a defendant's presence in the district vitiates a plaintiff's need for security, regard-

less of the actual financial state of the defendant:

> No matter how convincingly demonstrated the plaintiff's need for security, it will not authorize attachment against a defendant who is present in the district in both senses. On the other hand, the fact that a defendant can be subjected to the court's *in personam* jurisdiction by virtue of the presence of a resident agent for service of process will not suffice to defeat the attachment if the defendant is not otherwise present in the district in the jurisdictional sense; nor will the fact that the defendant is present in the jurisdictional sense suffice, if he cannot be found for service of process within the district. This test amounts to a somewhat arbitrary compromise which assumes that the plaintiff will not require the protection of an attachment for security, nor should the defendant be subjected to it, if the defendant is present in both senses, and assumes on the other hand that the plaintiff's interests are not adequately protected despite the ability to perfect *in personam* jurisdiction if the defendant is not present in both senses.

*Id.*

To be sure, such a hard-and-fast rule may occasionally sweep too broadly. We think, however, that Congress chose a determinate rule rather than a flexible standard to ensure that attachments may be obtained with a minimum of litigation. *See VTT Vulcan Petroleum, S.A. v. Langham–Hill Petroleum, Inc.,* 684 F.Supp. 389, 391 (S.D.N.Y.1988) ("[T]he ... test may represent the best way to avoid an otherwise overly burdensome case-by-case analysis of the actual need to provide a plaintiff with some security...."). In our view, this rule comports with the historical role of maritime attachments, and we see no support in the history of attachment case-

law for the less definite test imposed by the district court in this case.

We acknowledge, as we have said, that it is unclear whether the Supreme Court meant to adopt the vacatur standards—rather than simply the hearing—of former Local Rule 12. Even if it had, our review of the relevant district court caselaw for its persuasiveness convinces us that the practice of the Southern and Eastern Districts does not support the approach urged by Gardner Smith; rather, we are persuaded to the contrary. We adopt as the Rule E(4)(f) standard the limited former Local Rule 12 practice because it supports the time-honored policies embedded in Supplemental Rule B and the historical purposes of maritime attachments. *Cf. Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 863 (2d Cir.1985) (noting that this court "has not been in the vanguard of those which would concede the existence of broad equitable jurisdiction in an admiralty court"); *see also Eddie S.S. Co. v. P.T. Karana Line*, 739 F.2d 37, 39 (2d Cir.1984) (per curiam) ("[E]quity powers of an admiralty court remain severely circumscribed....").

■ If Gardner Smith's assets are presently located in the Southern District and Gardner Smith cannot be "found" within the district, Aqua Stoli is entitled under Rule B to attach those assets in aid of jurisdiction and to serve as security. The fact that Gardner Smith has substantial assets in another country is of no moment. Federal admiralty law allows a plaintiff to seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulties in tracking them down. Should it wish, Gardner Smith has the option of relieving itself of this particular attachment by posting other security. Rule E does not require Aqua Stoli to go to Aus-

tralia or any other country to sue Gardner Smith or to obtain security as long as Gardner Smith's assets are available to Aqua Stoli here.

## V. Vacatur

■ It does not follow, however, that district courts are without any equitable discretion to vacate maritime attachments that comply with Rule B. Following *Integrated* and the other pre-Rule E(4)(f) cases, we believe that an attachment may be vacated only in certain limited circumstances. Although the precise boundaries of a district court's vacatur power are not before us, we are persuaded that vacatur may be warranted when the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff. *See Integrated*, 476 F.Supp. at 124; *cf. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52–53 (2d Cir.1965) (discussing, but not resting on, the district court's vacatur of an attachment issued in the Eastern District because the defendant was present in the Southern District). The concept of "convenience," however, is a narrowly circumscribed one: A district court may vacate a maritime attachment only if the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought. An "across the river" case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated. It is less clear to us that a district court could vacate an attachment on convenience grounds where the adjacent district is more remote and therefore less obviously "convenient" to the plaintiff. A maritime attachment would likewise be properly vacated if the plaintiff and defen-

dant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets. Vacatur is also proper if the defendant's assets sufficient to satisfy a judgment have already been secured elsewhere, yet plaintiff seeks a further attachment.

■■ We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district;[4] 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff

could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.[5]

Our conclusion leads us to reject the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry. The vast majority of these cases were decided after our decision in *Winter Storm*;[6] some imply that their new tests stem from a belief that our decision in *Winter Storm* works an unfairness to litigants because EFTs to or from them can be attached despite the litigants' having no connection to the district at all, save that they happened to be a participant in a wire transfer of U.S. dollars. *See, e.g., Seaplus Line Co. v. Bulkhandling Handymax AS*, 409 F.Supp.2d 316, 320 (S.D.N.Y.2005); *Aqua Stoli*, 384 F.Supp.2d at 728. Regardless of the merits of *Winter Storm*, which has also been criticized by banking entities responsible for the wire transfer system, *see* Brs. of Amici Curiae The Clearing House Ass'n L.L.C.; Fed. Res. Bank of N.Y. (arguing that *Winter Storm* causes undue disruption to financial markets and undermines federal clearing system regulations), the

---

4. We have no occasion to discuss further this requirement, and we do not see that the district courts have experienced any confusion in its application. See *Integrated*, 476 F.Supp. at 122 (explaining this requirement).

5. Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

6. The correctness of our decision in *Winter Storm* seems open to question, especially its reliance on *Daccaratt*, 6 F.3d at 55, to hold that EFTs are property of the beneficiary or sender of an EFT. Because *Daccarett* was a forfeiture case, its holding that EFTs are attachable assets does not answer the more salient question of *whose* assets they are while in transit. In the absence of a federal rule, we would normally look to state law, which in this case would be the New York codification of the Uniform Commercial Code, N.Y. U.C.C. Law §§ 4–A–502 to 504. Under state law, the EFT could not be attached because EFTs are property of neither the sender nor the beneficiary while present in an intermediary bank. *Id.* §§ 4–A–502 cmt. 4, 4–A–504 cmt. 1.

tests created by the district courts do little to fix problems associated with *Winter Storm*. By the time of the Rule E(4)(f) hearing, it is likely that most, if not all, of the assets necessary to secure the potential judgment have already been restrained, so that the defendant's EFTs are again unimpeded, and any harm that *Winter Storm* may have imposed on a defendant has passed. Thus, notwithstanding the district courts' various tests, EFTs will still be attached by plaintiffs, forcing defendants either to post alternative security or challenge the attachment at a Rule E(4)(f) hearing.

In any event, the post-*Winter Storm* district court cases have hardly spoken with a single voice, undermining any notion that these cases are indicative of a consistent historical practice. Some have followed the *Integrated* jurisprudence and vacated only those attachments that failed to comply with Rule B.[7] Others have followed a needs test, requiring the plaintiff to show that, even if the defendant cannot be found within the district, the attachment is necessary to obtain jurisdiction over a defendant or to secure a potential judgment.[8] And the court below applied the needs-plus-balancing test discussed above. *See Aqua Stoli*, 384 F.Supp.2d at 729.

We also reject the reasoning of those few district court cases decided before *Winter Storm* that engaged in a broader equitable inquiry. Even after the promulgation of Rule E(4)(f), the vast majority of district court decisions continued to follow the limited *Integrated* rule. *See Bay Casino, LLC. v. M/V Royal Empress*, 20 F.Supp.2d 440, 451–52 (E.D.N.Y.1998); *Chestnut Shipping Co. v. T–3 Freight, Ltd.*, No. 94 Civ.1952, 1995 WL 75485 (S.D.N.Y. Feb. 22, 1995); *Siderbulk, Ltd. v. M/S Nagousena*, No. 92 Civ. 3923, 1992 WL 183575 (S.D.N.Y. July 23, 1992); *Verton Navigation, Inc. v. Caribica Shipping Ltd.*, No. 90 Civ. 6940, 1991 WL 24388 (S.D.N.Y. Feb.20, 1991); *Metal Transp. Corp. v. Account No. 232–2–405842*, No. 89 Civ. 8505, 1990 WL 103987 (S.D.N.Y. July 16, 1990); *Dragonfly Shipping Co. v. Can. Forest Navigation Co.*, No. 89 Civ. 6091, 1989 WL 146273, at *1–2 (S.D.N.Y. Nov.20, 1989); *VTT Vulcan Petroleum*, 684 F.Supp. at 390–92. While these district court decisions do not bind us, their accumulated wisdom is persuasive and presents the better historical pedigree.

We also reject the approach taken by the district court in *Royal Swan Navigation Co. v. Global Container Lines, Ltd.*, 868 F.Supp. 599 (S.D.N.Y.1994). Despite its claim of reliance on *Integrated*, the district court's vacatur inquiry in *Royal Swan* was in fact substantially broader.

---

7. *Deiulemar Compagnia Di Navigazione SpA v. Dabkomar Bulk Carriers Ltd.*, No. 05 Civ. 8199, 2006 WL 317241 (S.D.N.Y. Feb. 10, 2006); *Tramp Oil & Marine Ltd. v. Ocean Navigation (Hellas)*, No. 03 Civ. 5265, 2004 WL 1040701 (S.D.N.Y. May 7, 2004); *Yayasan Sabah Dua Shipping SDN BHD v. Scandinavian Liquid Carriers Ltd.*, 335 F.Supp.2d 441 (S.D.N.Y.2004); *Noble Shipping, Inc. v. Euro–Mar. Chartering Ltd.*, No. 03 Civ. 6039, 2003 WL 23021974 (S.D.N.Y. Dec.24, 2003). All but *Deiulemar* appear to ignore district court decisions applying alternative rules. The *Deiulemar* opinion discusses the uncertainty regarding the law in this area but does not resolve the question, holding that the plaintiff failed to establish that it had a prima facie maritime claim. *Deiulemar*, 2006 WL 317241, at *3.

8. *Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F.Supp.2d 318 (S.D.N.Y.2006); *T & O Shipping, Ltd. v. Lydia Mar Shipping Co.*, 415 F.Supp.2d 310 (S.D.N.Y.2006); *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co.*, 409 F.Supp.2d 427 (S.D.N.Y.2006); *Seaplus*, 409 F.Supp.2d 316; *Allied Mar., Inc. v. Rice Corp.*, No. 04 Civ. 7029, 2004 WL 2284389 (S.D.N.Y. Oct. 12, 2004).

*Royal Swan* held that, where the defendant seeks to vacate an attachment on the grounds that he is physically present in an adjacent jurisdiction, the court is justified in inquiring into the substantiality of the defendant's business activity in that adjacent jurisdiction to determine whether the attachment should be maintained. *Id.* at 604–06. The *Royal Swan* rule would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated. Such an inquiry is improper because Rule B specifies the sum total of what must be shown for a valid maritime attachment. *Integrated's* more limited inquiry respects the carefully chosen balance the rules have struck.

 We therefore conclude that the district court erroneously disposed of this case when it relied on a needs test and hardship balancing at the Rule E hearing. It was sufficient to sustain the attachment that Aqua Stoli satisfied the requirements of Rule B. Gardner Smith's rebuttal did not establish any of the limited grounds that could justify vacatur: that it would be subject to *in personam* jurisdiction in an adjacent district, that it was located and subject to personal jurisdiction in the same district as Aqua Stoli, or that Aqua Stoli had already obtained sufficient security. Rather, Gardner Smith proffered only the legally irrelevant showing that it had substantial assets elsewhere in the world.

## CONCLUSION

For the reasons set forth above, we VACATE the judgment of the district court and REMAND this case for further proceedings consistent with this opinion. Defendant pays costs.