**AET INC. LIMITED, Plaintiff,**

v.

**PROCURADORIA DE SERVICOS MARTIMOS CARDOSO & FONESCA, Defendant.**

**No. 06 Civ. 6845(DC).**

United States District Court, S.D. New York.

Dec. 7, 2006.

Blank Rome LLP by Richard V. Singleton II, Esq., New York City, for Plaintiff.

Freehill Hogan & Mahar, LLP by Patrick J. Bonner, Esq., New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Defendant Procuradoria de Servicos Martimos Cardoso & Fonesca ("Proc"), a ship agent located in Brazil, moves to vacate the Process of Maritime Attachment and Garnishment ("Order of Attachment") entered against it by this Court at the request of plaintiff AET Inc. Limited ("AET"). For the following reasons, Proc's motion is denied.

## BACKGROUND

### A. Facts

On October 15, 2004, AET, owner and operator of the vessel M/T Eagle Milwaukee (the "Eagle Milwaukee"), appointed Proc to serve as maritime agent when the Eagle Milwaukee was called to port in Brazil between approximately October 20 and 27, 2004. (Compl.¶¶ 3, 5–6). As the agent, Proc arranged for related services and paid various expenses incurred by the Eagle Milwaukee while it was in port. (*Id.* ¶ 7).

On or about October 26, 2004, AET paid Proc $53,033, pursuant to Proc's invoice of estimated expenses. (*Id.* ¶ 8). On or about November 9, 2004, AET inadvertently paid Proc an additional $175,464,85. (*Id.* ¶ 9). Due to an accounting error at Proc, the excess payment was treated as part of Proc's normal cash flow. (Cardoso Affirm ¶ 9). Proc eventually presented AET with an accounting listing the amount of expenses paid with a balance remaining in AET's favor. (Compl.¶ 11). Proc concedes that some amount is owed, but it does not have sufficient assets to pay the debt. (Cardoso Affirm ¶ 10).

### B. Procedural History

AET commenced this action on September 6, 2006, by filing a complaint and requesting an *ex parte* Order of Attachment against Proc's property in this district in the amount of $180,357,70 (the amount AET claims it is owed, plus an estimate of pre-judgment interest, judicial costs, and attorneys' fees recoverable in Brazil), pursuant to Supplemental Rules B and E for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B" and "Rule E").[1] AET contemplates litigation in Brazil, where

---

1. Rule B provides for attachment where a plaintiff files a verified complaint requesting Process of Attachment and Garnishment along with an Affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district.

Proc is located, and filed this action to obtain security.

On September 9, 2006, this Court entered an order directing the clerk to issue the Order of Attachment, and process was issued that same day. AET has served the Order of Attachment on garnishees listed in the Order of Attachment, resulting in attachment at both intermediary and beneficiary banks in New York of several electronic fund transfers ("EFTs") sent by other ship owners intended for Proc in payment for services rendered and expenses incurred.

On November 27, 2006, Proc filed an Order to Show Cause why the Order of Attachment should not be partially or fully vacated, pursuant to Rule E(4)(f). Proc contends that the majority of the money attached is not the "property" of Proc but rather the property of its customers, transferred to Proc for payment of expenses to third parties. To date, AET has attached $111,902.70. Of this money, Proc claims that only $9,375.00 [2] constitutes its property, and that the remaining amount "was sent by vessel owners to be funneled though Proc[ ] to pay" third parties. (Def.'s Mem. of Law, at 8). Hence, Proc argues, the bulk of the attached funds are not property subject to attachment under New York law. In the alternative, Proc contends that equity requires that the attached funds be released and the attachment stayed until the U.S. Court of Appeals for the Second Circuit clarifies whether EFTs can ever be subject to maritime attachment.

AET filed response papers, contending that the Court need not look to state law because Rule B preempts state law and the EFTs do constitute Proc's property even though some portion of the funds may have been "earmarked" for payment of third parties.

Oral argument was heard on December 4, 2006, and I reserved decision. For the reasons set forth below, I deny Proc's motion to vacate the Order of Attachment.

## DISCUSSION

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show the arrest or attachment should not be vacated or other relief granted consistent with these rules." Accordingly, AET has the burden of showing that the Order of Attachment was proper.

### A. Proc's Argument on the "Equities"

I reject Proc's suggestion that this Court stay the Order of Attachment until the Second Circuit "clarifies" whether EFTs may be subject to maritime attachment at all. (Def.'s Mem. of Law, at 13). Proc grounds this argument on a footnote in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, decided in July 2006. In *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 278 (2d Cir.2002), the Second Circuit held that "EFT funds in the hands of an intermediary bank may be attached pursuant to Admiralty Rule B(1)(a)." 310 F.3d at 276. In the *Aqua Stoli* footnote, the Second Circuit wrote that "[t]he correctness of our decision ... [in *Winter Storm*] that EFTs are property of the beneficiary or sender of an EFT" and thus attachable under Rule B "seems open to question." 460 F.3d at 445 n. 6. Yet despite this questioning, the Second Circuit

---

Rule B; *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 438 (2d Cir. 2006). Proc concedes that it cannot be found within the district.

2. AET notes, and this Court agrees, that by Proc's own admissions its undisputed share of this money is $11,375. Proc appears to have miscalculated the amount in its Memorandum of Law. (Def.'s Mem. of Law, at 8).

in *Aqua Stoli* did not overrule *Winter Storm*. Indeed, the Second Circuit confirmed in *Aqua Stoli* that "EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." *Id.* at 436; *accord id.* at 446 ("EFTs will still be attached by plaintiffs.").

Defendant's speculation that the Second Circuit at some future time may reverse course and find that EFTs are not attachable is not helpful. *Aqua Stoli* and *Winter Storm* are binding on this Court, and I will not stay the instant attachment pending some possible future Second Circuit decision changing the law otherwise. *See Maersk, Inc. v. Neewra, Inc.*, No. 05 Civ. 4356(RCC), 2006 WL 2854298, at *2 (S.D.N.Y. Oct. 6, 2006) ("*Aqua Stoli* can only be read to reaffirm *Winter Storm* as the law of this district."). *But see Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*, 461 F.Supp.2d 222, 225, 2006 WL 3335578, at *3 (S.D.N.Y.2006) (narrowly construing *Winter Storm* in light of *Aqua Stoli* to find that an EFT is the property of an originator while in transit, but not the property of a beneficiary while in transit).

### B. *Rule B*

Rule B provides as follows:

If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the Order of Attachment.

In *Aqua Stoli* the Second Circuit held that district courts are to look to the four corners of Rule B. *Aqua Stoli*, 460

F.3d at 446–47 (rejecting a "needs" or "needs-balancing" test, "because Rule B specifies the sum total of what must be shown for a valid maritime attachment"). Additionally, a district court may vacate an attachment order if defendant shows that (1) defendant is subject to suit in a convenient adjacent jurisdiction; (2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment. *Id.* at 445.

Proc has made no attempt to demonstrate any of the above three factors. Therefore, vacating the Order of Attachment turns on whether these funds from customers intended for Proc (in part for payment to third parties) and routed through New York via EFTs constitute Proc's "property" under Rule B. Both parties assert that neither Rule B nor any case law on point directly addresses whether EFT funds earmarked for payment to third parties fall within the meaning of "property" under Rule B, and are thus attachable.

Proc contends that absent a definition of "property" in Rule B or relevant federal case law, this Court should look to New York state law. *See Aqua Stoli*, 460 F.3d at 445 n. 6 ("In the absence of a federal rule, we would normally look to state law."). Proc may very well be correct that under state law EFTs in an intermediary bank are not attachable. The Second Circuit in *Aqua Stoli* concluded that under the New York codification of the Uniform Commercial Code, N.Y. U.C.C. Law § 4–A–502 to 504, EFTs "while present in an intermediary bank" "could not be attached because [those] EFTs are the property of neither the sender nor the beneficiary." *Aqua Stoli*, 460 F.3d at 445 n. 6 (citing N.Y. U.C.C. Law §§ 4–A–502 cmt. 4, 4–A–504 cmt. 1).[3]

3. Under New York law, the creditor of an

originator can only "levy on the account of

■ I disagree, however, with Proc's position that I must look to New York state law, for in my view *Winter Storm* answers the question here. In *Winter Storm*, the defendant had chartered a vessel from the plaintiff shipowner but had breached the charter party by failing to pay the full freight. 310 F.3d at 265. The defendant had funds wired from its Bangkok bank to pay an unrelated debt owed to a third party. *Id.* at 266. The funds were wired through an intermediary bank in New York and were held pursuant to a maritime attachment. *Id.* The Second Circuit held that even though the funds were intended as payment to a third party, they were still property of the defendant subject to attachment. *See Winter Storm*, 310 F.3d at 266, 273, 276; *accord Ythan Ltd. v. Am. Bulk Transp. Ltd.*, 336 F.Supp.2d 305, 309 (S.D.N.Y.2004). This was so even though the funds were in an intermediary bank. Under *Winter Storm*, the EFTs, which were intended for Proc, are Proc's property and therefore are subject to AET's Order of Attachment.[4]

It is also significant here that the funds in question were commingled—the payments were not held in a trust or escrow account or in any other form of segregated account for the benefit of a particular ship owner. *See* N.Y. C.P.L.R. § 5205 (listing personal property exempt from money judgments, including trust accounts). These funds were sent both to pay Proc for its services and for Proc to use in paying third-party vendors and other expenses. *See also Winter Storm*, 310 F.3d at 265 (finding attachable EFTs intended for a third party). Not only were the funds from each customer intended for third-party vendors and other expenses intermingled with what was owed to Proc, but Proc directed several customers to transfer money into the same account within a short time period.[5] (Cardoso Affirm Exs. 6, 11–13). Even assuming that in every instance Proc would have used only the

---

the originator in the originator's bank before the funds transfer is initiated," and "a creditor of the beneficiary that wants to reach the funds to be received by the beneficiary must serve creditor process on the beneficiary's bank." N.Y. U.C.C. Law § 4–A–502 cmt. 4. No creditor can reach funds in an intermediary bank. *See id.*

Under New York attachment law, any "property against which a money judgment may be enforced" is subject to attachment. N.Y. C.P.L.R. § 6202. The relevant section on money judgments provides that "[a] money judgment may be enforced against any property which could be assigned or transferred." *Id.* § 5201. Section 5205 of the C.P.L.R. lists personal property that is exempt from satisfaction of money judgments, which includes money held in trust for or by the judgment debtor.

4. Indeed, some of the attached funds were not in an intermediary bank but were in Proc's account when they were attached, and therefore even under the U.C.C. these funds would be attachable: The Banco do Brasil account attached in New York is Proc's account, not an account used as an intermediary in an EFT. (Def.'s Letter of Dec. 6, 2006). The funds attached at Citibank, however, were from a customer and were passing through Citibank as an intermediary bank. (*Id.*). Were I to apply New York law in this case, under *Aqua Stoli* I would have to find that while the funds attached at Banco do Brasil are Proc's property, the funds attached at Citibank, an intermediary bank, are not Proc's property and therefore not properly attached under Rule B. *Aqua Stoli*, 460 F.3d at 445 n. 6. But for the reasons discussed above, New York law does not control.

5. Between October 9 and October 24, 2006, Proc instructed the owners of four vessels— the Zallaq, World Lion, Euro Amaranto, and Patris—to wire a total of $73,456.20 to Proc, all directed to a single account number at the Banco do Brasil. (Cardoso Affirm. ¶¶ 18–20, 25–27, 29–31 & Exs. 6, 11–13; Def.'s Mem. of Law, at 5–8). These EFTs represent the bulk of the attached money and are the subject of the majority of the exhibits presented by Proc in support of its motion to vacate the Order of Attachment.

money transferred to it by each individual customer to pay that specific customer's third-party vendors—a proposition this Court finds unlikely in light of Proc's practice of having multiple ship owners wire money to only one account in a very short period of time—Proc nowhere claims to be under a legal obligation to conduct its business in this manner, and in none of the contracts, invoices, or communications produced by Proc in support of its motion does it promise to do so.[6]

## CONCLUSION

For the above reasons, I conclude that AET's Rule B Order of Attachment is proper. The motion to vacate the Order of Attachment is denied.

SO ORDERED.

**6.** Proc also asserts that the overpayment by AET was not the fault of Proc. (Cardoso Affirm ¶ 8). Proc argues that the Order of Attachment causes a hardship—that Proc cannot meet its financial obligations and that both vendors and customers are angry with Proc because of this. This is probably true, and understandable. These circumstances, however, do not vitiate AET's claim to its money, nor do they mandate this Court's vacatur of the Order of Attachment. *See Aqua Stoli*, 460 F.3d at 446–47 (holding that courts must not engage in a "needs" or "needs-balancing" test with respect to EFTs). Likewise, that Proc does not have enough cash on hand to meet its financial obligations while the Order of Attachment is in place is not the fault of AET.