**GENERAL TANKERS PTE. LTD., Plaintiff,**

v.

**KUNDAN RICE MILLS LTD. and Kundan Group Ltd., Defendant.**

No. 06 Civ. 8292(VM).

United States District Court, S.D. New York.

Feb. 21, 2007.

Jack A. Greenbaum, Blank Rome, LP, New York City, for Plaintiff.

Lauren Cozzolino Davies, Tisdale & Lennon, LLC, New York City, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

On October 11, 2006, Plaintiff General Tankers PTE. LTD. ("General Tankers") applied *ex parte* for an order for process of maritime attachment against Defendant Kundan Rice Mills LTD. ("Kundan Rice") pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims ("Rule B"). *See* Fed. R.Civ.P. Supp. R. B(1). The Court granted the order of attachment. Third parties Kundan Care Products Ltd. ("Kundan Care") and Zeyad Al Masloqi Trading Office ("Zeyad") now move to vacate the attachments of funds held by HSBC Bank USA ("HSBC") and Citibank, N.A. ("Citibank") respectively. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1333.

### I. BACKGROUND[1]

General Tankers chartered a vessel to Kundan Rice on April 10, May 20, and August 5 of 2004 and claims that during Kundan Rice's use of the vessel, a demurrage of $51,333.36 accrued in General Tankers' favor. Under a clause in the charter agreements, General Tankers reserved its right to arbitration under the Federal Arbitration Act, 9 U.S.C. § 8. To secure its claim for arbitration, which was estimated at $79,670.36, General Tankers applied for maritime attachment against Kundan Rice, which was subsequently ordered by this Court under Rule B. This rule allows for attachment in any *in personam* admiralty or maritime claim where the defendant cannot be found within the district. *See* Rule B.

The Complaint alleges that, although Kundan Rice was not found in the District, it was believed that it had or would soon have assets in this District in the form of, among other things, electronic fund transfers ("EFT"). This Court, satisfied that the conditions of Rule B existed, ordered the attachment of "all tangible and intangible property belonging to, claimed by or being held for [Kundan Rice] by any garnishees within this District, including but not limited to [EFT]s originated by, payable to, or otherwise for the benefit of" Kundan Rice. (Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment, dated Oct. 11, 2006 ("Attachment Order") at 2). The Attachment Order was executed and resulted in the attachment of five EFTs.

In an unrelated transaction, Kundan Rice entered into a contract with Zeyad under which Kundan Rice was to receive a $10,000 advance for an export order. The advance was to be sent to Kundan Rice's account with Canara Bank, located in New Delhi, India. Because the payment was in United States dollars, however, it had to be routed through an American bank, namely Citibank.

The second transaction at issue involved Kundan Care, a separate legal entity from Kundan Rice. Kundan Care purchased ammonium bicarbonate from another third

---

1. The factual recitation and contentions set forth below are drawn from the Verified Complaint, dated Oct. 10, 2006 (the "Complaint") and contentions from the Notice of Motion to Vacate Maritime Attachment, dated Jan. 16, 2007, the Affidavit of Matthew H. James in Opposition to Motion to Vacate Attachments, dated Jan. 24, 2007, the Memorandum of Law in Support of Third Party Movants' Motion to Vacate the Attachment, dated Jan. 16, 2007, and the Declaration of Mr. Udit Garg in Support of Kundan Care Products' Motion to Vacate Maritime Attachment, dated Jan. 16, 2007 ("Garg Declaration"). Except as quoted or otherwise cited, no other specific reference to these documents will be made.

party for $2,152.50. The payment was similarly in United States dollars and was therefore sent via EFT through HSBC in the District. Pursuant to the Attachment Order, both of the EFTs were attached upon entry into the District.

Kundan Care and Zeyad have moved to vacate each of these attachments respectively. Zeyad moves to vacate on the theory that EFTs are not attachable against their beneficiaries until received by the beneficiaries' bank and the EFT is therefore Zeyad's property and not attachable against Kundan Rice. Kundan Care moves to vacate attachment of its funds on the grounds that it is not a party to this action and is a distinct and separate legal entity from Kundan Rice.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

 A vacatur is justified where "1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir.2006). Vacatur is also appropriate where the defendant has no property interest in the attached property, as it is only the defendant's property that may be attached. *See* Rule B. ("[A] verified complaint may contain a prayer for process to attach the defendant's tangible or intangible property....").

### B. *ZEYAD VACATUR CLAIM*

The first question for this Court is whether Kundan Care received a property interest in the EFT funds while the money was in transit from Zeyad. It is clear that "under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." *Aqua Stoli*, 460 F.3d

at 436 (*citing Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir.2002)). However, Zeyad points to what he contends represents a change in direction in the Second Circuit based on analysis put forth in *Seamar Shipping Corp. v. Kremikovtzi Corp.*, 461 F.Supp.2d 222 (S.D.N.Y.2006). *Seamar* posits that a footnote in *Aqua Stoli* implicitly requires a narrow application of the attachment rule, finding a property interest only in the originator of an EFT while the funds are in transit. *See id.* at 225. Although the text of *Aqua Stoli*, quoted above, plainly states that both the originator and the beneficiary of the EFT hold a property interest warranting attachment, footnote 6 of that opinion notes that the *Winter Storm* decision was open to question, particularly with regard to "whose assets [the EFTs] are while in transit." *Aqua Stoli*, 460 F.3d at 446 n. 6. According to the *Seamar* court, that footnote made it "illogical to construe other statements in *Aqua Stoli* to broaden *Winter Storm,*" which determined that only the originator had a property interest in an EFT while the funds are in transit. *Seamar*, 461 F.Supp.2d at 225.

Other district court decisions since *Aqua Stoli* have not followed *Seamar. See, e.g., Maersk, Inc. v. Neewra, Inc.*, 2006 WL 2854298, at *2 (S.D.N.Y. Oct.6, 2006) ("That the court of appeals made mention, in a footnote, of a reason why *Winter Storm* might have been incorrectly decided is of no moment. Indeed, *Aqua Stoli* can only be read to reaffirm *Winter Storm* as the law of this circuit."); *AET Inc. Limited v. Procuradoria de Servicos Martimos Cardoso & Fonesca*, 464 F.Supp.2d 241, 244 (S.D.N.Y.2006)("Defendants' speculation that the Second Circuit at some future time may reverse course and find that EFTs are not attachable is not helpful. *Aqua Stoli* and *Winter Storm* are binding on this Court, and I will not stay the instant attachment pending some possible future Second Circuit decision change the

law otherwise."). *Seamar* is thus alone in its interpretation of *Aqua Stoli* as impliedly restricting *Winter Storm* attachment only to originators.

In fact, *Aqua Stoli's* full import is perhaps best understood by examining the district court implementation of *Winter Storm.* Between *Winter Storm* and *Aqua Stoli,* courts in this Circuit quickly accepted that beneficiaries as well as the originators of EFTs have a property interest in those funds while in transit. *See, e.g., Noble Shipping, Inc. v. Euro–Maritime Chartering Limited,* 2003 WL 23021974, at *3 (S.D.N.Y. Dec.24, 2003). Further, the general proposition held that a debt which is attachable by the beneficiary's creditors applied to the EFT context as well. *See id.* The decision to treat EFTs as debt acknowledged the ability to attach an EFT as a concurrent property interest held by both the originator and the beneficiary. *See HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.a. de C.V.,* 2005 WL 1036127, at *3–*4 (S.D.N.Y. May 4, 2005). The result, allowing the attachment of an EFT against both the originator and beneficiary, was readily accepted by reason of the broad terms of Rule B's attachment language which does not require exclusive property interests. *Seamar* does not question the correctness of these rulings, nor does it point to how *Aqua Stoli* overrules them, but instead states that the cases were decided prior to *Aqua Stoli,* implying that they are inapplicable. *See* 461 F.Supp.2d at 225 n. 3.

This Court does not view the reasoning of *Noble* and *HBC* as inapposite, as it is not persuaded that the footnote in *Aqua Stoli* implies a restrictive reading of *Winter Storm.* While the footnote may query the appropriateness of any attachment of an EFT at an intermediate bank, whether against the originator or the beneficiary, it cannot be read unequivocally to overrule *Winter Storm,* nor to undermine the clear

language of the balance of the decision in *Aqua Stoli.*

▬ The Second Circuit has established a clear procedure in overruling prior panel decisions. It "is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or [the Second Circuit] *en banc.*" *United States v. Ianniello,* 808 F.2d 184, 190 (2d Cir.1986), *rev'd on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989). A panel that wishes to record an implicit overruling by the Second Circuit *en banc* of an opinion which departs from or calls into question a prior panel's ruling, has traditionally circulated the opinion to all active members of the court to express approval of the ruling. *See Adeleke v. United States,* 355 F.3d 144, 155 n. 9 (2nd Cir.2004); *United States v. Taylor,* 464 F.2d 240, 244 (2nd Cir.1972); *but see Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 n. 5 (2d Cir.2005) (circulating the opinion only to those members of the court who were empaneled for the cases being departed from). *Seamar* concedes that this procedure is well-settled and was not followed in *Aqua Stoli. See* 461 F.Supp.2d at 225. Hence, the current interpretation of *Aqua Stoli*—that EFTs to and from a party are attachable—remains undisturbed. Therefore, the Court finds that Kundan Rice had a property interest in the EFT from Zeyad to Kundan Rice and that the EFT was appropriately attached.

### B. *KUNDAN CARE VACATUR*

The issue for the Court in deciding Kundan Care's motion to vacate is relatively straightforward and uncontested. Kundan Care maintains and verifies that it is a separate and legal entity from Kundan Rice. (*See* Garg Declaration, Exs. 2–4.) Thus, the funds attached were not the property of Kundan Rice. General Tankers does not explicitly concede this claim, but

400

nonetheless states that it does not wish to "burden this Court by challenging the arguments of Kundan Care." (*See* Pl.'s Mem. in Opp'n to Joint Mot. to Vacate the Attachs., dated Jan. 24, 2007, at 1.) The Court thus finds that the funds transmitted through HSBC by Kundan Care, totaling $2,152.50, are not the property of Kundan Rice and therefore not attachable.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 5) of Zeyad Al Masloqi Trading Office to vacate the attachment herein is DENIED with respect to funds attached by Citibank, N.A; and it is further

**ORDERED** that the motion (Docket No. 5) of Kundan Care Products Ltd. to vacate the attachment herein is GRANTED with respect to the funds attached by HSBC Bank, U.S.A.

**SO ORDERED.**