**RONDA SHIP MANAGEMENT INC., Plaintiff,**

v.

**DOHA ASIAN GAMES ORGANISING, COMMITTEE a/k/a DAGOC, Defendant.**

**No. 07–CV–94 (CM).**

United States District Court, S.D. New York.

Sept. 20, 2007.

Nancy Rebecca Peterson, Patrick F. Lennon Lennon, Murphy & Lennon, LLC, New York, NY, for Plaintiff.

Shane Howard Freedman, Patton Boggs, LLP, Newark, NJ, for Defendant.

## DECISION AND ORDER

McMAHON, District Judge.

Defendant Doha Asian Games Organising Committee ("DAGOC") moves pursuant to *Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims* of the Federal Rules of Civil Procedure ("Rule E(4)(f)") to vacate this Court's January 5, 2007, Ex Parte Order for Process of Maritime Attachment, or alternatively, to reduce the amount of that attachment.

For the reasons discussed below, the defendant's motion to vacate the order of attachment is DENIED and its motion to reduce plaintiff's attachment is GRANTED.

## I. *Background*

On January 5, 2007, Ronda Ship Management, Inc. ("Ronda Ship") filed a verified complaint (the "Complaint") against the defendant DAGOC seeking an ex parte order for process of maritime attachment pursuant to *Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims* ("Supplemental Rule B"). The Complaint alleges that: (1) Ronda Ship, "an entity duly organized and existing by virtue of the laws of Liberia," Compl. P 1, entered into a charter agreement with the head owners of two vessels, the Mona Lisa and New Flamenco (the "Vessels"); (2) Ronda Ship, by two charter parties dated October 23, 2006 chartered the Vessels to defendant DAGOC, who cannot be found within this District pursuant to Supplemental Rule B, Compl. P 3; (3) "disputes arose between the parties regarding Defendant's repudiation/renunciation of the charter party contracts", Compl. P 2; (4) defendant breached the contract, resulting in damages to Ronda Ship for a total sum of $15,000,000; (5) "pursuant to the charter parties, all disputes arising thereunder were to be submitted to the London High Court of Justice in London with English law to apply"; (6) Ronda Ship was preparing to commence litigation on its claims in London and expected to recover a total sum of $18,903,194.26 (including the principal claim, interest at 6% for three years, and attorneys' fees and costs).

The Court reviewed the verified complaint and attorney affidavit and, after determining that the conditions of Supplemental Rule B appeared to exist, entered an order authorizing process of maritime

attachment and garnishment. On or about March 13, 2007, pursuant to the order of attachment, $9,758,609.73 of the $18,903,194.26 sought by the plaintiff had been attached. The funds were attached while in the hands of intermediary banks in New York, J.P. Morgan Chase and Citibank, during electronic fund transfers ("ETFs"). $9,284,207.34 of the funds that were attached originated from the defendant's bank and were intended for a third party; $474,402.39 were being wired to the defendant.

Plaintiff subsequently commenced litigation in London on August 22, 2007. Plaintiff claims damages in the sum of $12,208,600 for the repudiation of three time charter parties together with interest at 8% per annum, consequential damages, and costs. (*See* Claim Form (August 22, 2007), which is attached as Ex. A to the Declaration of John Nicholas Pople ("Pople Decl.").) The Complaint only alleges that DAGOC breached two time charter parties. (*See* Compl. at ¶ 5–7.)

Defendant does not contend that it is present in the district or that there is a maritime law or statutory bar to the attachment. What is at issue is: (1) whether Ronda Ship's claim was premature at the time of attachment; (2) whether plaintiff has established a prima facie admiralty claim; (3) whether the electronic fund transfers attached by Ronda are subject to attachment; and (4) whether the amount of the attachment should be reduced.

## II. *Discussion*

To obtain a maritime attachment, a plaintiff must satisfy the requirements of Supplemental Rule B, which states in relevant part:

> If a defendant is not found within the district ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees

named on the process.... The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed.R.Civ.P. Supp. R. B(1)(a)-(b).

■ Rule E(4)(f) entitles any person whose property has been attached pursuant to Supplemental Rule B the opportunity for a "prompt hearing at which plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed.R.Civ.P. Supp. R. E(4)(f). The plaintiff has the initial burden to show that its attachment satisfies the requirements of Supplemental Rules B and E. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 n. 5 (2d Cir.2006). In order to sustain an attachment, a plaintiff must prove that it has satisfied the "filing and service requirements of Rules B and E" and that: (1) it has a valid prima facie admiralty claim against the defendant, (2) the defendant is not present in the district, (3) defendant's property can be found within the district, and (4) there is no maritime law or statutory bar to the attachment. *Aqua Stoli*, 460 F.3d at 445. However, "maritime plaintiffs are not required to prove their case at this stage." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06–CV–15375(KMK), 2007 WL 831810, slip op. at *2 (S.D.N.Y. March 15, 2007).

■ District courts have equitable discretion to vacate maritime attachments that comport with Rule B and E only in certain limited circumstances: (1) the defendant is present in a convenient adjacent jurisdiction, (2) defendant is present in the district where plaintiff is located, or (3) the

plaintiff has already obtained sufficient security for a judgment. *Id.*

Defendant's motion raises four issues: (1) whether Ronda Ship's claim was premature at the time of attachment; (2) whether Ronda Ship has established a prima facie admiralty claim; (3) whether the electronic fund transfers attached by Ronda Ship are subject to attachment, and (4) whether the amount of the attachment should be reduced.

## A. Plaintiff Did Not Seek An Attachment Prematurely

The defendant contends that the plaintiff did not have a valid maritime claim against the defendant at the time of attachment because the plaintiff had not yet commenced an underlying action. In support of its position, the defendant mistakenly relies on a line of cases finding that an indemnity claim may not serve as the basis of a Rule B attachment where the underlying action had not been commenced or resolved. *See Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901 (2d Cir.1965); *J.K. Int'l Pty., Ltd. v. Agriko S.A.S.*, No. 6 Civ. 13259(KMK), 2007 WL 485435, slip. op. at *4–5 (S.D.N.Y. Feb. 13, 2007); *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, S.A.*, No. 5 Civ. 4550(DC), 2005 WL 2218025, at *1–2 (S.D.N.Y. Sept. 9, 2005); *Seatrans Shipping Corp. v. Interamericas Marine Transp. Ltd.*, No. 97 Civ. 2329(LMM), 1997 WL 214939, at *3 (S.D.N.Y. Apr.29, 1997). Maritime attachment based upon a claim for contingent indemnity presents a distinguishable situation because there are issues as to whether the indemnity claim has accrued. *See, e.g., id.; Sonito Shipping Co. Ltd. v. Sun United Mar. Ltd.*, 478 F.Supp.2d 532 (S.D.N.Y.2007).

In maritime attachment cases not based upon a claim for contingent indemnity, courts have allowed a plaintiff to apply for an attachment in contemplation of litigation. *See AET Inc., Ltd. v. Procuradoria de Servicos Martimos Cardoso & Fonesca*, 464 F.Supp.2d 241 (S.D.N.Y. 2006) (plaintiff filed a valid action to obtain security in contemplation of litigation in Brazil); *World Reach Shipping Ltd. v. Indus. Carriers Inc.*, No. 06 Civ. 3756(NRB), 2006 WL 3316828 (S.D.N.Y. Nov. 9, 2006) (plaintiff satisfied the standards for attachment in an action to obtain security pre-arbitration). Here, plaintiff sought an attachment in contemplation of litigation in London; its action was not premature.

## B. Plaintiff States A Prima Facie Admiralty Claim

The majority of courts in this district have understood *Aqua Stoli* to require the application of the prima facie standard when considering the adequacy of a claim in a maritime vacatur motion. *See Dolco Inves., Ltd. v. Moonriver Dev., Ltd.*, 486 F.Supp.2d 261, 266 (S.D.N.Y. 2007); *SPL Shipping Ltd.*, 2007 WL 831810, at *3; *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06–cv–1979, 2006 WL 4459297, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006); *but see Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275 (S.D.N.Y. 2006) (applying a "reasonable grounds" standard when assessing the *Aqua Stoli* factors). This court agrees with the weight of authority in this district and will apply the prima facie standard.

Under this standard, the Court looks only to the Complaint to determine whether the plaintiff has alleged a valid admiralty claim against the defendant. *SPL Shipping*, 2007 WL 831810, at *3; *see also Aqua Stoli*, 460 F.3d at 445; *Tide Line*, 2006 WL 4459297, 2006 U.S. Dist. LEXIS 95870, at *16. "[M]aritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing."

*Transportes Navieros Y Terrestes, S.A. De D.V. v. Fairmount Heavy Transp. N.V.,* No. 07 Civ. 3076(LAP), 2007 WL 1989309, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) (citation omitted). Moreover, *Aqua Stoli* implies that a plaintiff need not provide evidence showing that it has a claim against the defendant to satisfy its burden under Rule E(4)(f). *Tide Line,* 2006 WL 4459297, 2006 U.S. Dist LEXIS 95870, at *16.

 The prima facie standard in the maritime attachment context is a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts. *Id.* 2006 WL 4459297, 2006 U.S.Dist LEXIS 95870 at *17 n. 7. To plead a valid prima facie admiralty claim, Supplemental Rule E(2)(a) requires that a complaint " . . . state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P. Supp. R. E(2)(a). This standard is more stringent that the pleading requirements of the Federal Rules of Procedure. *United States v. 4492 S. Livonia Rd.,* 889 F.2d 1258, 1266 (2d Cir.1989); *Tide Line,* 2006 WL 4459297, 2007 U.S. Dist. LEXIS, at *24.

 Here, DAGOC contends that it never executed the charter parties that DAGOC is alleged to have breached, so no enforceable contract exists between Ronda and DAGOC. To the extent that DAGOC challenges the substance of Ronda Ship's claim, its arguments go to the ultimate merits of the claims, which are more properly the subject of the pending litigation in London. *See World Reach,* 2006 WL 3316828, at *2 (refusing to evaluate the merits of plaintiff's claims when evaluating whether plaintiff has established a prima facie admiralty claim because the merits were more properly the subject of the

underlying arbitration). While the defendant can argue that the plaintiff does not have a valid prima facie admiralty claim against the defendant, the basis of the argument cannot be that the plaintiff has not provided sufficient evidence of such a claim. *Tide Line,* 2006 WL 4459297, 2007 U.S. Dist. LEXIS, at *21. Instead, the defendant must argue that "plaintiff's pleadings are themselves insufficient to state such a claim." *Id.* The Court will only look to plaintiff's pleadings to determine whether it has demonstrated "an in personam claim against Defendant[ ] which is cognizable in admiralty." *Dolco Inves.,* 486 F.Supp.2d at 266. Given that the Court's inquiry focuses on whether plaintiff has alleged a claim cognizable in admiralty, and not the merits of plaintiff's claim, it is unnecessary for the Court to determine which law applies to the ultimate merits of plaintiff's claim.

Ronda Ship submitted a verified complaint in which it alleged a proper admiralty claim against DAGOC. It is undisputed that plaintiff's claim, based on a contract to charter vessels and provide services to those vessels, is maritime in nature. Under the prima facie standard, Ronda Ship has pleaded a sufficient claim in admiralty.

### C. The Attachment Reached Property of DAGOC

 DAGOC contends that the electronic fund transfers (EFTs) cannot be attached while at intermediary banks. The defendant's argument is foreclosed by the laws of this circuit.

It is clear that "under the laws of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." *Aqua Stoli,* 460 F.3d at 436 (citing *Winter Storm Shipping Ltd. v. TPI,* 310 F.3d 263 (2d Cir.2002)). In *Aqua Stoli,* the Second Circuit dropped a footnote questioning the

correctness of the *Winter Storm* decision. *Id.* at 446 n. 6. However, *Aqua Stoli* did not overrule *Winter Storm;* indeed it "can only be read to reaffirm *Winter Storm* as the law of this circuit." *Maersk, Inc. v. Neewra, Inc.,* 2006 WL 2854298, at *2, 2006 U.S. Dist. LEXIS 73096, at *2 (S.D.N.Y Oct. 6, 2006); *see also Consub Delaware LLC v. Schahin Engenharia Limitada,* 476 F.Supp.2d 305, 311 (S.D.N.Y. 2007) ("Despite the fact that the Second Circuit—in dicta—questioned the correctness of *Winter Storm,* it did not overrule *Winter Storm.*").

Nonetheless, the defendant claims that its argument is not foreclosed by the rule set forth in *Winter Storm.* In support of its position, the defendant mistakenly relies on *Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.,* 461 F.Supp.2d 222 (S.D.N.Y.2006). In that case, Judge Rakoff narrowly construed *Winter Storm* as applying where the defendant is the originator of the EFT, but not where the defendant is the beneficiary. *Seamar Shipping,* 461 F.Supp.2d at 225. Still, Judge Rakoff recognized that, at the very least, an EFT is the property of an originator. *Id.; see also Mediterranea Di Navigazione SPA v. International Petrochemical Group S.A.,* No. 06 Civ. 6700(JGK), 2007 WL 1434985, at *2–3, 2007 U.S. Dist. LEXIS 35869, at *7 (S.D.N.Y. May 15, 2007). No other court in this district has adopted Judge Rakoff's narrow interpretation of *Winter Storm. Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co.,* No. 06 Civ. 13765(WHP), 2007 WL 1002265, at *11–13 (S.D.N.Y. Apr. 4, 2007) (collecting cases).

Despite defendant's urging, there is no need for the Court to resolve whether *Seamar Shipping*'s narrow reading of *Winter Storm* is correct. Unlike *Seamar Shipping,* the defendant in this cases is the originator of $9,284,207.34 of the $9,758,609.73 in funds that have been attached pursuant to this Court's Order. (Declaration of Mahmoud Abu Al–Dahab Decl. at ¶ 6.) EFTs are the property of an originator while in transit and thus attachable. *Compania Sudamericana,* 2007 WL 1002265, at *3–4, 2007 U.S. Dist. LEXIS 24737, at *11 (citing *Aqua Stoli,* 460 F.3d at 443). As to the $474,402.39 that was being wired to DAGOC, this Court remains bound by the Second Circuit's decisions in *Winter Storm* and *Aqua Stoli,* which hold that "EFTs to or from a party are attachable by a court as the pass through banks located in that court's jurisdiction." *Aqua Stoli,* 460 F.3d at 436 (citing *Winter Storm,* 310 F.3d at 263).

The Court finds that plaintiff has satisfied the service and filing requirements of Supplemental Rules B and E and fulfilled the four requirements set forth in *Aqua Stoli.* Furthermore, there is no basis for vacating the valid attachment on equitable grounds. Therefore, the motion to vacate the attachment is denied.

### D. *Attachment Reduction*

Alternatively, DAGOC has moved, pursuant to Rule E(6), for a reduction in the amount of the attachment. That motion is granted.

▬ Whenever security is taken and a motion made, the court may reduce the amount of security given for "good cause shown" pursuant to Supplemental Admiralty Rule E(6). Fed.R.Civ.P. Supp. Rule (E)(6); *see also Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.,* No. 05 Civ. 7173(NRB), 2005 WL 2446236, at *1 (S.D.N.Y. Oct. 3, 2005). The Court is required to determine whether the amount attached is "excessive" or "reasonably necessary to secure the plaintiff's claim." *A.R.A. Anomina Ravannate Di Armamento, SPA v. Heidmar Inc.,* No. 97 Civ. 1383(JSR), 1997 WL 615495 (S.D.N.Y. Oct.

6, 1997) (quoting *Rolls Royce v. Indus. Power (India) v. Fratzis M.*, No. 95 Civ. 2630(CSH), 1995 WL 846690, at *3 (S.D.N.Y. July 24, 1995)). This does not require the plaintiff to prove its damages with "exactitude." *Dongbu Express Co., Ltd. v. Navios Corp.*, 944 F.Supp. 235, 237 (S.D.N.Y.1996). However, "the court must be satisfied that the plaintiff's claims are not frivolous." *Id.*

Since filing the Complaint, plaintiff has commenced litigation on its claims in London and revised its estimate of the total claim to reflect updated information. (*See* Pople Decl.) In the Complaint, plaintiff calculated a total claim of $18,903,194.26 in the following way: $15,000,000 for the principal claim; $2,937,199.02 in interest at 6% per year over 3 years; and $965,995.24 in estimated legal fees and other recoverable costs. (Compl. at ¶ 11.) The revised total claim of $16,138,600 plus "damages at large" was submitted by John Pople, plaintiff's foreign counsel, and calculated in the following way: $12,208,600 for the principal claim; $2,930,000 in interest at 8% per year over three years; $1,000,000 in estimated costs. (Pople Decl. at ¶ 39.) Plaintiff asserts that it intends to claim damages for loss of reputation, and that once the claim for loss of reputation is taken into account, it is reasonable to maintain the attachment at the level originally granted. (*Id.* at ¶ 35, 40.)

▪ Defendant advances two primary arguments to support its contention that the amount of security should be reduced. First, defendant claims that Section 21.3 of the charter parties expressly precludes the recovery of consequential and indirect damages. This argument raises a question of contract interpretation. It is not for this Court to decide whether incidental and consequential damages are recoverable under the charter parties at issue, but rather for the English court to resolve in due course. The Court is satisfied that plaintiff's claims are not frivolous and will not reduce the attachment to exclude loss of reputation damages. These damages are estimated at $2,764,594.26.[1]

▪ Second, defendant argues that plaintiff's claim for damages is "artificially inflated and speculative." Defendant claims that plaintiff should not be able to seek $3,651,200 in security for breach of the "Ocean Countess" charter party since plaintiff's Complaint does not allege a breach of this contract. The Court agrees. The "Ocean Countess" charter party is not mentioned in the Complaint, and the Court will reduce the attachment by $3,651,200.

Plaintiff's principal claim with respect to the two charter parties mentioned in the Complaint amounts to $7,737,400. 8% interest on this claim equals $2,075,494.06. Taken together with the estimated legal costs ($1,000,000) and the loss of reputation damages ($2,764,594.26), plaintiff's total claim equals $13,577,488.32. Defendant's motion to reduce the attachment is granted, and the amount of attachment is hereby reduced to $13,577,488.32.

### III. *Conclusion*

For the foregoing reasons, defendant's motion to vacate the order of attachment is DENIED and its motion to reduce the amount of the attachment is GRANTED.

---

1. Plaintiff did not quantify loss of reputation damages for purposes of the Claim Form that it submitted to the English court, but instead requested "damages at large." (Pople Decl. at ¶ 38(a)(v).) However, plaintiff asserts that once damages for loss of reputation are taken into account, the Court should maintain the attachment at the level originally granted. (*Id.* at ¶ 40.) Thus, the Court subtracted the revised claim ($16,138,600) from the original level ($18,903,194.26) to arrive at a $2,764,594.26 estimate for loss of reputation damages. The Court assumes this number includes an estimate of interest on those damages.