**EFKO FOOD INGREDIENTS LTD., Plaintiff,**

v.

**PACIFIC INTER–LINK SDN BHD, Defendants.**

**No. 08 CV 6480 (CM).**

United States District Court, S.D. New York.

Sept. 25, 2008.

Lauren Cozzolino Davies, Thomas Leonard Tisdale, Tisdale Law Offices, LLC, New York, NY, for Plaintiffs.

Lawrence Jay Kahn, Freehill, Hogan & Mahar, LLP, New York, NY, for Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO VACATE THE MARITIME ATTACHMENT AND DISMISSING CASE

McMAHON, District Judge:

EFKO sought, and this Court signed, an ex parte order of maritime attachment in this case, based upon the following allegations in the verified complaint:

Plaintiff, EFKO Food Ingredients LTD., (EFKO), is a foreign company with its principal place of business in Russia. Defendant, Pacific Inter–Link SDN BHD (PIL), is a foreign corporation or other business entity with its principal place of business in Kuala Lumpur.

Plaintiff entered into six contracts with defendant whereby PIL agreed to sell and EFKO agreed to buy six separate 1500 metric ton shipments of red palm olein, between the months of January and June, 2008. Each of the contracts obligated defendant to arrange for and charter of an oceangoing vessel to transport the cargo to its destination and to load the olein aboard the vessel at a port in Malaysia, for carriage by sea to plaintiff at the port of Ilychevsk, Ukraine.

Defendant allegedly failed to perform on any of the contracts. Plaintiff suffered damages in the principal amount of $4,073,250.00, plus significant expenditures

incurred in litigating this matter, which is currently being arbitrated in London, England, pursuant to Articles 31 and 32 of the Federation of Oils Seeds and Fats Association (FOSFA).

Defendant cannot be found within this district. Assets of defendant will pass through this district during the pendency of the case. Verified Complaint ¶¶ 1–13.

EFKO represents that it has attached PIL funds in the full amount of the attachment.

PIL has filed a motion asking the Court to vacate or reduce the attachment, dismiss the case, and award defendant fees and disbursements expended in defending this action. Defendant argues that the Court has no subject matter jurisdiction over this action because "no contracts existed" between the parties. Defendant further argues that, even if the Court were to find contracts between the parties were formed, plaintiff asserts no maritime claim upon which a Rule B attachment may be based, because the contracts are not maritime contracts, but rather, contracts for the sale of goods, with incidental maritime terms. Defendant's Brief at 5.

It is EFKO's position that the validity of the contracts between the parties must be determined in the ongoing London Arbitration, and that certain terms in the contracts give rise to maritime claims, which affords EFKO the right to a maritime attachment. Plaintiff's Brief 3–4.

*Standards for Maritime Attachment and Vacatur*

To obtain a maritime attachment, a plaintiff must satisfy the requirements of Supplemental Rule B, which states in relevant part:

> If a defendant is not found within the district ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named on the process.... The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed.R.Civ.P. Supp. R. B(1)(a)-(b).

■ Rule E(4)(f) entitles any person whose property has been attached pursuant to Supplemental Rule B the opportunity for a "prompt hearing at which plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed.R.Civ.P. Supp. R. E(4)(f). The plaintiff has the initial burden to show that its attachment satisfies the requirements of Supplemental Rules B and E. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 n. 5 (2d Cir.2006). In order to sustain an attachment, a plaintiff must prove that it has satisfied the "filing and service requirements of Rules B and E" and that: (1) **it has a valid prima facie admiralty claim against the defendant,** (2) the defendant is not present in the district, (3) defendant's property can be found within the district, and (4) there is no maritime law or statutory bar to the attachment. *Aqua Stoli*, 460 F.3d at 445. However, "maritime plaintiffs are not required to prove their case at this stage." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06–CV–15375(KMK), 2007 WL 831810, slip op. at *2 (S.D.N.Y. March 15, 2007). Indeed, "a detailed discussion of the merits [ ] has little bearing on the motion to vacate, which is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met." *Chiquita Int'l Ltd. v. M.V. Bosse*, 518

F.Supp.2d 589, 599 (S.D.N.Y.2007), *quoting Aqua Stoli*, 460 F.3d at 445.

Here, plaintiff has not proven that is has a valid prima facie admiralty claim against the defendant, because the contracts at issue (assuming they exist) are not maritime contracts.

Defining whether a contract is subject to admiralty jurisdiction requires a conceptual approach rather than a spatial approach. *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 23, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) (citation omitted): *accord Folksamerica Reins. Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 311 (2d Cir.2005). As facts vary case by case, great importance is placed in resolving this jurisdictional question on how such contracts have been treated in the past. *Folksamerica*, 413 F.3d at 311 (noting the Supreme Court's "instruct[ion] that '[p]recedent and usage are helpful insofar as they exclude or include certain common types of contract'") (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961)).

When analyzing whether a contract is subject to admiralty jurisdiction, courts are required to "look to the contract's "nature and character" to see 'whether it has 'reference to maritime service or maritime transactions.'"" *Id.* (quoting *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 24, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) (quoting *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510 (1919)) and citing *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1, 26, 11 Wall. 1, 20 L.Ed. 90 (1870)).

### The Validity of the Six Contracts

The court must first dispose of an initial matter. Whether the parties consummated the six contracts is not an issue for me to decide. That matter is the subject matter of the London arbitration. Plaintiff has

adequately alleged in its complaint that it entered into six contracts with defendant, and that defendant's alleged breach of those contracts are being litigated in the London Arbitration. This is all that is required of the Plaintiff at this stage of the proceedings.

*Aqua Stoli* makes clear that, "The determination of whether a plaintiff has a valid maritime claim is a prima facie standard." *Chiquita Int'l Ltd.*, 518 F.Supp.2d at 592–93 *citing Ronda Ship Mgmt. v. Doha Asian Games Organising Comm.*, 511 F.Supp.2d 399 (S.D.N.Y.2007). Indeed, the Second Circuit "reject[ed] the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry." *See Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 CV 1979, 2006 WL 4459297 *11 (S.D.N.Y.2006) (discussing in detail the holding of *Aqua Stoli* ).

In any event, the declarations submitted in support of Defendant's motion on this point are contradicted by the declarations submitted in support of Plaintiffs' opposition to Defendant's motion. Even if the Court were to consider all of this information, it would not be able to resolve the factual disputes between the parties over whether a contract actually exists. Therefore, plaintiff has sufficiently pled for Rule B purposes that defendant breached six contracts for the sale of red palm olein.

The more interesting question, and the question the Court can not defer to the London arbitration, is: Does the nature of the six alleged contracts give rise to maritime jurisdiction in this court, thereby justifying the attachment of defendant's assets within this district?

My answer is no.

### The Nature of the Contracts

EFKO claims that the disputed contracts are maritime in nature and give rise to a maritime claim capable of supporting

a Rule B attachment. Rule B maritime attachment can be invoked only when a plaintiff files a verified complaint sufficient to make a *prima facie* showing that the plaintiff has a valid maritime claim against the defendant in the amount sued for. *See Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS*, 78 F.Supp.2d 162, 166 (S.D.N.Y.1999), *citing* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 21–2 at 471 (2d ed. 1999). The absence of maritime jurisdiction, however, is fatal to a plaintiffs attachment. *Id.*

While the courts have generally found the outer limits of the boundaries of admiralty jurisdiction difficult to draw, "The United States Supreme Court has held that the 'true criterion' and 'crucial consideration' for determining admiralty jurisdiction is the 'nature and subject matter of the contract at issue.'" *Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal*, 411 F.Supp.2d 386, 393 (S.D.N.Y.2006); *see also Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). In determining the "nature and subject matter of the contract at issue," it is well-established that the contract should be identified as a maritime contract only if it "directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract relate in some preliminary (shore side) manner to maritime affairs." 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 3010 at 111.

■■■ Admiralty jurisdiction does not attach to a contract merely because the services to be performed under the contract have reference to a ship, or to its business, or that the ship is the object of such services. *Intercontinental Contractors, Inc. v. Canadian Maritime Carriers, Ltd.*, 1986 WL 5338, *1, 1986 U.S. Dist. LEXIS 25872, *2 (E.D.PA. May 6, 1986), *referencing* 1 *Benedict on Admiralty* § 182 (2005). "In order to be considered maritime, there must be a ***direct and substantial link*** between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping." 1 *Benedict on Admiralty* § 182 (2005) (emphasis supplied). The touchstone of admiralty jurisdiction is whether the services rendered are maritime in nature. *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 612, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991). Contracts that are "mixed"—that contain marine and non-marine elements—generally fall outside of admiralty jurisdiction, subject to two exceptions—(1) where the claim arises from a breach of a maritime obligation that is severable from the non-maritime obligations of the contract, and (2) where the non-maritime elements are merely incidental to the maritime elements. *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 314 (2d Cir.2005).

Here, the subject matter of the contracts is the sale and purchase of a quantity of palm olein. Neither palm olein nor the sale thereof is directly or intimately related to the operation of a vessel or its navigation. It has been widely held that a commodity sale and purchase contract—even if the contract requires maritime transport relating to the shipment of the commodity—is not maritime in nature. *French Republic v. Fahey*, 278 F. 947, 949 (D.Md.1922) (indicating that a non-maritime contract of sale and purchase does not become maritime merely because one of the parties may be entitled to recover demurrage damages); *Aston Agro–Industrial AG v. Star Grain Ltd.*, 2006 WL 3755156, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006) (holding that a sale and purchase contract is not maritime merely because it contains maritime terms, such as a requirement to pay demurrage,

and does not give rise to maritime jurisdiction, even if the sole claim relates to the non-payment of demurrage). *See also Shanghai Sinom Import and Export v. Exfin (India) Mineral Ore Co., Pvt. Ltd.,* 06 CIV 4711(GEL), 2006 WL 4029953 (S.D.N.Y. Oct. 5, 2006) (unpublished, copy attached as Ex. 5 to the Kahn Affirmation) (holding that the breach of a provision of a sale and purchase contract does not give rise to maritime jurisdiction, vacating attachment); *F.H. Bertling Holding KG v. Ranhill Engineers and Constructors,* 2008 WL 2693630, 2008 U.S. Dist. LEXIS 52085 (S.D.N.Y. July 9, 2008) (vacating attachment and dismissing action on basis of a lack of maritime jurisdiction when underlying contract was merely for the supply of logistics support (which included a maritime component)).

■ The underlying alleged "contracts" in this action are for the purchase and sale of goods-the sort of contracts that would be subject to the Uniform Commercial Code if they had been entered into in the United States. Such contracts are not maritime in nature.

Plaintiff argues that the contracts and its claims for breach are maritime in nature because the defendant was required to charter ships to pack up and deliver the palm olein, and defendant breached that aspect of the agreement. This is bootstrapping of the most egregious sort. Defendant's responsibility to arrange for shipment is only incidental to the sale and purchase contract as a whole. This term (which provided only for the purchase price to include cost and freight) does not give the contract a "direct and substantial link" between the contract and the operation of a vessel.

Plaintiff is not seeking damages for anything related to the shipping of the prod-

uct; it is seeking damages for failure to transfer title to the palm olein. Its claim does not fall within either *Folksamerica* exception. And the "primary objective" of the contract is not to accomplish the transportation of goods by sea—which the Second Circuit has identified the "important question" in assessing admiralty jurisdiction, *see F.H. Bertling Holding KG v. Ranhill Engineers and Constructors Sdn. Bhd.,* 2008 WL 2693630, *4, 2008 U.S. Dist. LEXIS 52085, *15 (S.D.N.Y. July 9, 2008)—but the sale of goods. Charter parties and other maritime contracts of carriage have as their primary objective the transportation of goods by sea. Contracts for the sale and purchase of goods that specify the manner of delivery (even if by sea) have as their primary objective the transfer of title to goods—not the means by which they are transported transport. *See, e.g.,* Judge Crotty's recent decision in *Petraco Oil Co. Ltd. v. Progetra S.A.,* 08 CIV 3115(PAC) (S.D.N.Y. Aug. 19, 2008).

EFKO's reliance on the Supreme Court's decision in *Norfolk Southern Ry. v. James N. Kirby, Pty. Ltd.,* 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) is misplaced. In *Kirby,* the Supreme Court held that federal maritime contract jurisdiction extends to all controversies in which maritime commerce plays a *substantial* role, particularly with regard to bills of lading that involve transport of goods by sea as a significant aspect of an overall transportation contract: "so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus is a maritime contract." *Id.* at 27, 125 S.Ct. 385. There is no such bill of lading contract, or indeed any "maritime commerce" (as defined by the *Kirby* Court) involved in this case.[1]

---

**1.** In any event, *Kirby* concerned whether a state's limitation of liability law could trump

federal law in a case where goods were damaged in the overland portion of an intermodal

What EFKO alleges is that PIL agreed to sell EFKO the palm olein. To hold that this is a maritime claim would substantially and unjustifiably extend the reach of this country's admiralty jurisdiction. This court will not be party to such an endeavor—and will carefully scrutinize contracts in the future and refuse to sign ex parte orders of attachment in cases where it is obvious (as it should have been obvious to me two months ago) that no maritime claim is being arbitrated.

The attachment is vacated and the complaint is dismissed. Defendant's request for its fees and disbursements is denied.

trip. *Kirby* has nothing to do with Rule B     attachments.