**NANYUAN SHIPPING CO. LIMITED, Plaintiff,**

v.

**MARIMED AGENCIES UK, Defendant.**

No. 08 Civ. 9861(VM).

United States District Court, S.D. New York.

Jan. 22, 2009.

---

Michael E. Unger, Freehill, Hogan & Mahar, LLP, New York, NY, for Plaintiff.

Garth S. Wolfson, Mahoney & Keane, LLP, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

On November 14, 2008, plaintiff Nanyuan Shipping Co. Limited ("Nanyuan") applied ex parte for an order for process of a maritime attachment (the "Attachment") against then-defendants Liana Carriers Inc. ("Liana Inc.") and Marimed Agencies UK ("Marimed"), pursuant to Rule B ("Rule B") of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims. *See* Fed.R.Civ.P. Supp. R. B(1). The Court granted the Attachment.

Nanyuan subsequently discovered, however, that the entity Liana Inc. did not exist and was named in error. Nanyuan voluntarily discontinued the action against Liana Inc. and, upon Nanyuan's request, the Court ordered that the Clerk of the Court amend the Attachment as against the property of Marimed only, and further ordered that the caption be amended to reflect Marimed as the sole defendant.

Non-party Liana Carrier Ltd. ("Liana Ltd.") now moves to vacate the Attachment against Marimed, pursuant to Rule E ("Rule E") of the Admiralty Rules. *See* Fed.R.Civ.P. Supp. R. E(4)(f). For the reasons stated below, Liana Ltd.'s motion to vacate the Attachment is GRANTED.

## I. BACKGROUND [1]

In the Complaint accompanying its ex parte application for the Attachment, Nanyuan alleged that it entered into a maritime contract of charter party ("Charter Party") with Liana Inc. as charterer. Nanyuan alleged that it delivered its vessel into the service of Liana Inc. on or about August 23, 2008, but Liana Inc. cancelled the charter on or about October 24,

---

1. The factual and procedural summary derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: the Verified Complaint, dated November 13, 2008 (the "Complaint"); the Memorandum of Law in Support of Order to Show Cause, dated December 3, 2008 ("Liana Mem."); the Declaration of Michael Racah, dated December 3, 2008 ("Racah Dec."); Plaintiff's Memorandum of Law in Response to Motion to Vacate Attachment as to Liana Carrier Ltd., dated January 5, 2009 ("Nanyuan Opp."); the Affidavit of Michael E. Unger, dated January 5, 2009 ("Unger Jan. Aff."); and Reply Memorandum of Law in Support of Motion, dated January 7, 2009 ("Liana Reply"). Except as quoted or otherwise cited, no other specific reference to these documents will be made.

2008, in breach of the Charter Party. The Charter Party provides for all disputes to be resolved by arbitration in London with English law to apply.

In the application, Nanyuan sought security for the unpaid principal, interest, and arbitration costs, all totaling $1,573,217.22. As part of its application, Nanyuan submitted an affidavit from its counsel, Michael E. Unger, representing that Liana Inc. and Marimed could not be "found" within this District within the meaning of Rule B. Nanyuan also alleged that Marimed is the alter ego of Liana Inc. The Court granted the Attachment.

Nanyuan subsequently learned that the Charter Party was actually with Liana Ltd., not Liana Inc.[2] Liana Ltd. was registered with the New York Department of State ("Department of State") to do business in New York at the time of the commencement of the action, and is arguably "found" in this District such that, according to Liana Ltd., the Attachment should not have issued. On December 3, 2008, Nanyuan voluntarily dismissed the action against Liana Inc. Upon Nanyuan's request, the Court ordered that the Attachment be amended as against the property of Marimed only. In a letter to the Court, Nanyuan stated that the assets of Marimed have been restrained at two banks and that "[b]oth transfers . . . were being sent by 'Liana Carriers Ltd. c/o Marimed Agencies UK.' Accordingly, it is plaintiff's position that defendant Marimed Agencies UK has an attachable interest in those funds." (Letter to the Court from Michael E. Unger, dated December 3, 2008.)

Also on December 3, 2008, Liana Ltd. moved to vacate the Attachment pursuant to Rule E. Liana Ltd. argues that it could be "found" within this District at the time

the Complaint was filed. Liana Ltd. further argues that Marimed is not a signatory to the Charter Party nor a participant in any underlying arbitration. Liana Ltd. thus contends that the Attachment must be vacated because: (1) if Marimed is an alter ego of Liana Ltd., then Marimed can be found in this District under the law of this Circuit; and (2) if Marimed is not an alter ego of Liana Ltd., then Nanyuan does not have a valid prima facie admiralty claim against Marimed to support the Attachment, as required by Rule B.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

■ There are four elements a plaintiff must meet in order for a Rule B attachment to issue: (1) the plaintiff "has a valid prima facie admiralty claim against the defendant;" (2) "the defendant cannot be found within the district;" (3) "the defendant's property may be found within the district;" and (4) "there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir.2006) ("*Aqua Stoli*"). "[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Id.*; *see also* Fed. R.Civ.P. Supp. R. E(4)(f).

Rule B provides, in relevant part, that:

If a defendant is not found within the district . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

---

**2.** By all accounts, there is no such entity as "Liana Carriers Inc." and Nanyuan's naming of that entity in the Complaint was premised

on a typographical error in the Charter Party. (*See* Liana Mem. at 1; Nanyuan Opp. at 1.)

Fed.R.Civ.P. Supp. R. B(1)(a). Although Rule B does not define "found within the district," the Second Circuit has interpreted it to require "a two-pronged inquiry: first, whether [the defendant] can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process" (the "*Seawind Test*"). *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir.1963) (citations and quotation marks omitted). Whether a defendant is found within the district is to be determined as of the date the verified complaint and accompanying affidavit are filed. *See* Fed. R.Civ.P. Supp. R. B(1)(a).

## B. *APPLICATION*

### 1. *Liana Ltd. Has Standing to Seek Vacatur of the Attachment*

Nanyuan first argues that the only defendant remaining in this action is Marimed, and thus, Liana Ltd. does not have standing to seek vacatur of the Attachment because Liana Ltd.'s counsel does not represent Marimed. According to Nanyuan, only Marimed's counsel, and no one else, may seek vacatur of the Attachment.

Nanyuan further argues that Liana Ltd. does not have an attachable interest in the restrained funds because records of certain wire transfers provided by intermediary banks' representatives list those transfers as being originated by "Liana Carrier Ltd. c/o Marimed Agencies UK Ltd." (*See* Unger Jan. Aff., Exs. F, G.) Nanyuan thus suggests that the listing of Marimed as the originator of these wire transfers evidences an attachable interest in the funds on behalf of Marimed and not Liana Ltd.

■ The Court finds that Liana Ltd. has standing to seek vacatur of the Attachment. Rule E entitles "*any person* claiming an interest in [the attached property]

... to a prompt hearing at which the plaintiff shall be required to show why the ... attachment should not be vacated or other relief granted consistent with these rules" (emphasis added). Thus, if Liana Ltd. claims an interest in the attached property, it is entitled to a Rule E hearing, despite not being a named defendant in this action.

The Court is further persuaded that Liana Ltd. sufficiently claims an interest in the attached property. Liana Ltd. provided to the Court a statement under penalty of perjury that the attached funds belong to Liana Ltd. (*see* Racah Dec., Ex. D). The only evidence provided by Nanyuan that Liana Ltd. does not have an interest in the attached property are notices from the intermediary banks' representatives indicating that the originator of the funds was Liana Ltd. "care of" Marimed. (*See* Unger Jan. Aff., Exs. F, G.) Such a proffer does not sufficiently demonstrate that Liana Ltd. does not have an "interest" in the attached property; to the contrary, it more strongly suggests that Marimed had only "temporary charge" of such funds on Liana Ltd.'s behalf, and that the property is owned by Liana Ltd. *Cf. Jackson v. United States*, 526 F.3d 394, 397 (8th Cir. 2008) (describing "c/o" as meaning "temporary charge"); *In re NETtel Corp., Inc.*, 364 B.R. 433, 461 (Bankr.D.Dist.Col.2006) (describing "c/o" as meaning "that another only has 'custody' or 'temporary charge' of an item belonging to another" (citation omitted)). Liana Ltd. therefore sufficiently claims an "interest" in the attached property, and the burden shifts to Nanyuan to demonstrate that the Attachment should be maintained. *See Aqua Stoli*, 460 F.3d at 445 n. 5 ("Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E.").[3]

### 2. *Nanyuan Has Not Demonstrated That It Satisfied the Requirements for an Attachment*

Nanyuan next argues that it has met the procedural and technical requirements for the Attachment to issue under *Aqua Stoli* and Rule B. Nanyuan asserts that Marimed could not be "found" in this District by virtue of its status as Liana Ltd.'s possible alter ego because, assuming such alter ego status is true, there was no way for Nanyuan to have known that Liana Ltd. was Marimed's alter ego at the time the Complaint and affidavit were filed.

■ The Court is persuaded that Nanyuan has failed to meet the requirements of Rule B as set forth in *Aqua Stoli* and *Seawind*. If Marimed is not an alter ego of Liana Ltd. or any other entity, then Nanyuan cannot maintain a valid prima facie maritime claim against Marimed pursuant to Rule B and *Aqua Stoli*. By all accounts, Marimed is not a signatory to the Charter Party, and Nanyuan does not assert any other allegations giving rise to a valid prima facie maritime claim against Marimed in its own right. Therefore, absent a theory of alter ego status, the Attachment against Marimed must be vacated.

In the alternative, if Marimed was Liana Ltd.'s alter ego at the time the Complaint was filed, the Attachment must be vacated if Liana Ltd. (1) could be found in this District at that time for jurisdictional purposes; and (2) could be found in this District at that time for service of process. Nanyuan does not dispute that Liana Ltd. could be found in this District for jurisdictional purposes;[4] rather, Nanyuan argues that Liana Ltd. could not have been found in this District for the purpose of service of process at the time the Complaint was filed because Nanyuan was not aware of Liana Ltd.'s status as Marimed's possible alter ego until after it filed the Complaint. According to Nanyuan, "[a]llowing a defendant to claim that the prior appointment of an agent for service of process and the registration of its alter ego to do business in the State makes it found in the District should be summarily rejected as an attempted end run around Rule B." (Nanyuan Opp. at 7.)

Nanyuan fails to recognize, however, that Liana Ltd. could be found for service of process at the time the Complaint was filed: Liana Ltd. was registered with the Department of State to do business in New York at that time and Nanyuan could have served Liana Ltd. with process through that agency. *See, e.g., Marimed Shipping Inc. v. Persian Gulf Shipping*

---

3. The Court notes that Marimed may not have an attachable interest in the *res* in this action. *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 276 (2d Cir.2002) (citation omitted) (stating a defendant's interest in attached property in a maritime proceeding must be clear). If Marimed had temporary charge of property that was owned at all times by Liana Ltd., then Nanyuan has not necessarily demonstrated to a sufficient degree Marimed's clear interest in that property. The Court need not resolve this issue, because even if Marimed has an attachable interest, the Court would still vacate the Attachment for the reasons provided below. *See infra* Part II.B.2.

4. Courts in this District have repeatedly recognized that if a defendant's alter ego can be found in this District for jurisdictional purposes, then the defendant is also deemed to be found. *See, e.g., S.E.C. v. Montle*, 65 Fed. Appx. 749, 753–54 (2d Cir.2003); *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 142–43 (2d Cir.1991); *Glory Wealth Shipping Pte Ltd. v. Industrial Carriers, Inc.*, 590 F.Supp.2d 562, 563, 2008 WL 5352043, at *1 (S.D.N.Y.2008); *Miramax Film Corp. v. Abraham*, No. 01 Civ. 5202, 2003 WL 22832384, at *6 (S.D.N.Y. Nov. 25, 2003).

*Co.,* 567 F.Supp.2d 524, 528–29 (S.D.N.Y. 2008) (following majority of courts in this District in holding that "defendant's registration as a foreign corporation authorized to do business in New York State, with a designated agent for service of process in this District, satisfies *both* prongs of the *Seawind* Test for " 'found within the district' " " (citation omitted) (emphasis added)).

Further, Nanyuan, to avoid vacatur of the Attachment, cannot rely upon the argument that it was not aware of Liana Ltd.'s existence as a possible alter ego of Marimed. Nanyuan is responsible for its own complaint and the allegations contained in it. Nanyuan alleged that Marimed was an alter ego of Liana Inc., and subsequently conceded that no such entity exists. Under these circumstances, there are two ways to proceed: either (1) the Court disregards all references to Liana Inc. as an alleged alter ego of Marimed, in which case the Complaint fails to allege a valid prima facie maritime claim against Marimed in its own right; or (2) the Court interprets the allegations against Liana Inc. to have been alleged as to Liana Ltd., which could be found in this District for service of process at the time the Complaint was filed. Either way, the Court must vacate the Attachment. However, Nanyuan cannot have it both ways—the Court cannot maintain an Attachment against Liana Ltd.'s property when, under applicable law in this District, that entity could be found in this District at the time of Nanyuan's filing for service of process.

Another court in this District recently addressed a similar argument in *Glory Wealth.* There, plaintiff Glory Wealth argued that defendant Diamant was an alter ego of ICI, which by all accounts could be found in this District. Judge Holwell ruled:

Because alter egos of a defendant present in the district are present in the district, Glory Wealth can satisfy its burden only if it concedes that its alter ego allegation is baseless. Glory Wealth could make this concession [in] the alternative, but either way it loses. If Diamant is an alter ego, it is found in the district; if Diamant is not an alter ego, there is no valid prima facie maritime claim to support an attachment.

2008 WL 5352043, at *2 (citation omitted). The Court agrees. If Liana Ltd. is not Marimed's alter ego, there is no valid prima facie maritime claim to support the Attachment. If Liana Ltd. is Marimed's alter ego, Marimed could be found in this District at the time of Nanyuan's filing the instant action.

The Court need not, and does not, resolve whether Marimed is actually an alter ego of Liana Ltd.; it is sufficient for the Court to conclude that Nanyuan fails to satisfy the requirements of Rule B and *Aqua Stoli* under either prospect, and the Attachment must therefore be vacated.

### III.   *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Docket No. 10) of Liana Carriers Ltd. to vacate the Order of Attachment as against the property of Marimed Agencies UK, dated December 3, 2008, is GRANTED.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**